**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 6**

Docket No. AT-1221-15-0157-W-1

**Javier Soto,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

April 20, 2022

Joyce E. Kitchens, Esquire, Atlanta, Georgia, for the appellant.

Kristin Langwell, Esquire, St. Petersburg, Florida, for the agency.

**BEFORE**

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

**OPINION AND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action under 5 U.S.C. § 1221(e).  For the reasons set forth below, we GRANT the appellant's petition and REMAND this matter for further adjudication consistent with this Opinion and Order.

BACKGROUND

¶2      The appellant, a reemployed annuitant, occupied the GS-0996-12 Ratings Veterans Service Representative position with the agency's Veterans Service Center in Orlando, Florida.  Initial Appeal File (IAF), Tab 5 at 127.  By notice dated June 30, 2014, the deciding official, who was the Director of the St. Petersburg Regional Office, separated the appellant from his position and the

Federal service, stating without elaboration that his "services [were] no longer required." *Id.* at 27-28. The following day, the appellant sought corrective action from the Office of Special Counsel (OSC). IAF, Tab 7 at 10-18. He alleged that his separation was in reprisal for protected disclosures contained in two Quality Review Team (QRT) Studies, and for various grievances and complaints he filed in his capacity as Executive Vice President of the American Federation of Government Employees (AFGE) Local 1594. IAF, Tabs 28-42.

¶3      While the OSC complaint was pending, the deciding official prepared a memorandum, dated September 22, 2014, setting forth her reasons for separating the appellant. IAF, Tab 4 at 55-57. Her stated reasons were that the appellant had engaged in misconduct involving his attendance and work schedule at an April 2014 equal employment opportunity training and a May 2014 training with AFGE, and had improperly claimed case credit by making duplicate entries in the agency's Automated Standardized Performance Elements Nationwide database in June 2014. *Id.* The deciding official explained that, during this 3-month period, the appellant was dishonest and misled management, refused to follow instructions, and demonstrated a lack of integrity. *Id.* at 57. She further stated—apparently, unbeknownst to her, incorrectly—that removal was the only disciplinary option available, because, as a reemployed annuitant, the appellant was "excluded from the legal authority to admonish, reprimand or suspend." *Id.*

¶4      By letter dated September 30, 2014, OSC informed the appellant that it had completed its investigation, and advised him of his right to file an individual right of action (IRA) appeal with the Board. IAF, Tab 1 at 14-15. The appellant filed a timely IRA appeal on November 18, 2014. IAF, Tab 1. Following a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action. IAF, Tab 75, Initial Decision (ID). As a preliminary matter, he found that the appellant had established Board jurisdiction concerning his claims that the agency separated him in reprisal for protected disclosures under 5 U.S.C. § 2302(b)(8) and protected activity under 5 U.S.C.

§ 2302(b)(9)(A)(i) and (B).[1]  ID at 3-6.  Turning to the merits, the administrative judge found that, assuming the appellant's comments in the QRT Studies were protected disclosures, he failed to show that they were a contributing factor in his separation.  ID at 8-12.  The administrative judge further found that the appellant failed to prove that he participated in activity protected under 5 U.S.C. § 2302(b)(9)(A)(i), because the grievances he had filed on his own behalf did not include allegations of whistleblowing reprisal under 5 U.S.C. § 2302(b)(8).  ID at 12-14.  However, the administrative judge found that some of the appellant's representational activities on behalf of other employees were both protected under 5 U.S.C. § 2302(b)(9)(B) and a contributing factor in his separation.  ID at 14-22.  After conducting an analysis of the factors identified in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), the administrative judge determined that the agency had met its burden of proving by clear and convincing evidence that it would have separated the appellant in the absence of his protected activity.  ID at 22-51.

¶5   This petition for review followed.  Petition for Review (PFR) File, Tab 1.  On review, the appellant does not contest the findings below concerning his claims under 5 U.S.C. § 2302(b)(8) and (b)(9)(A)(i), but he contends that the administrative judge should have found that he engaged in two additional protected activities under 5 U.S.C. § 2302(b)(9)(B).  *Id.* at 32-33.  He further argues that, contrary to the findings in the initial decision, the agency failed to show by clear and convincing evidence that it would have separated him in the

---

[1] The Board has long held that reemployed annuitants enjoy the protections of 5 U.S.C. § 2302, unless explicitly excluded from coverage by 5 U.S.C. § 2302(a)(2)(B)(i) or (ii).  *Acting Special Counsel v. U.S. Customs Service*, 31 M.S.P.R. 342, 346-47 (1986).  We agree with the administrative judge that there is nothing in the statutory language of the Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465, to suggest that the Board's jurisdiction over IRA appeals would not extend to reemployed annuitants claiming reprisal for protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) or (B).  ID at 5-6.

absence of his protected activity. *Id.* at 4-31. He also provides medical documentation concerning a witness, the President of AFGE Local 1594, on the theory that her health condition explains behavior upon which the administrative judge relied in making an adverse credibility determination against her. *Id.* at 16, 36-38; ID at 41-42. The agency has filed a response, to which the appellant has replied. PFR File, Tabs 3-4.

## ANALYSIS

The appellant failed to show that his new claims that he engaged in additional activity are protected under 5 U.S.C. § 2302(b)(9)(B).

¶6      Under 5 U.S.C. § 2302(b)(9)(B), it is a prohibited personnel practice to take a personnel action against an employee "because of [the employee] testifying for or otherwise lawfully assisting any individual" in "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation[.]" 5 U.S.C. § 2302(b)(9)(A)-(B). In deciding the merits of a claim that an agency took a personnel action in violation of 5 U.S.C. § 2302(b)(9)(B), the Board will analyze the claim under the burden-shifting framework set forth at 5 U.S.C. § 1221(e). *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 13 (2015). First, the Board will determine whether the appellant has established by preponderant evidence[2] that he was involved in protected activity under 5 U.S.C. § 2302(b)(9)(B). *Alarid*, 122 M.S.P.R. 600, ¶ 13. Next, the Board will determine whether the appellant's participation in the protected activity was a contributing factor in the challenged personnel action at issue. *Id.* One way of proving that an appellant's protected activity was a contributing factor in a personnel action is the "knowledge/timing" test, which is satisfied by showing that the responsible agency official knew of the protected activity and took the personnel action

---

[2] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor in the action. *Id.*; *see* 5 U.S.C. § 1221(e)(1). If the appellant makes both of these showings by preponderant evidence, the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected activity.[3] *Alarid*, 122 M.S.P.R. 600, ¶ 14.

¶7        An appellant can establish that he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(B) by proving that he testified or otherwise lawfully assisted another employee in "any appeal, complaint, or grievance right granted by any law, rule, or regulation." 5 U.S.C. § 2302(b)(9)(A); *Alarid*, 122 M.S.P.R. 600, ¶ 13. The Board has interpreted the term "appeal, complaint, or grievance" to mean an initial step toward taking legal action against the agency for a perceived violation of employment rights. *See Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶¶ 18-19 (2016); *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶¶ 9-11 (2014). Performing union-related duties in support of another employee's appeal, complaint, or grievance may constitute protected activity under 5 U.S.C. § 2302(b)(9)(B). *See Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 6 (2014) (finding that representing an agency employee during an informal grievance meeting falls under the protective umbrella of the statute).

¶8        The administrative judge found below that the following activities were both protected under 5 U.S.C. § 2302(b)(9)(B) and a contributing factor in the appellant's separation: (1) a March 2014 discussion with the deciding official

---

[3] Clear and convincing evidence is that measure or degree of proof that produces in the mind of a trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e). Section 1221(e)(2) does not explicitly state that the clear and convincing evidence test applies to claims of retaliation for protected *activity* under 5 U.S.C. § 2302(b)(9)(B), because it only addresses *disclosures*, which are covered by subsection (b)(8), but the Board has consistently adopted that interpretation. *See Alarid*, 122 M.S.P.R. 600, ¶ 14; 5 C.F.R. § 1209.7(b).

regarding the venue of a grievance meeting; (2) a May 20, 2014 third-step grievance filed against an official in the agency's West Palm Beach location, alleging improper management interference with union representation of an unnamed bargaining-unit member regarding a performance improvement plan (PIP); (3) a May 23, 2014 third-step grievance filed against Human Resources Management (HRM), concerning a dispute over requests for information (RFIs) regarding the PIPs of two bargaining-unit members; (4) a June 10, 2014 third-step grievance alleging that management failed to include AFGE in an unnamed bargaining-unit member's PIP meeting; and (5) a June 10, 2014 third-step grievance against the Chief of HRM, alleging continued delay in responding to RFIs concerning the PIPs for the two bargaining-unit members.  ID at 14-22; IAF, Tab 40 at 32-33, Tab 41 at 10-11, 43-44, 55-56, Tab 51 at 14-18.  On review, the appellant contends that the administrative judge should have found that the following activities also were protected:   (1) an April 16, 2014 reply to the proposed admonishment of a bargaining‑unit member; and (2) a May 23, 2014 memorandum to the deciding official objecting to HRM's response to an RFI concerning the PIPs of the two bargaining-unit members.   IAF, Tab 40 at 32-33; ID at 16-21; IAF, Tab 39 at 64-72, Tab 40 at 4-13, Tab 41 at 66-67.

¶9        Regarding the April 16, 2014 reply to the proposed admonishment of another bargaining-unit member, the administrative judge correctly found that the appellant's activity was not protected, because there is no law, rule, or regulation granting a right to reply to a proposed admonishment.  ID at 16-17.  Thus, in making that reply, the appellant did not assist another employee in an appeal, complaint, or grievance right granted by law, rule, or regulation.  5 U.S.C. § 2302(b)(9)(B); *see Graves*, 123 M.S.P.R. 434, ¶¶ 3, 14 (finding that the appellant's testimony before an agency investigative board in support of a coworker was not protected under 5 U.S.C. § 2302(b)(9)(B) because the investigation did not constitute the exercise of an appeal, complaint, or grievance right).  On review, the appellant argues that the administrative judge should have

considered that a proposed admonishment may be grieved under the applicable collective bargaining agreement. PFR File, Tab 1 at 32. However, assuming the appellant is correct that there was a law, rule, or regulation granting the employee the right to grieve her proposed admonishment under the collective bargaining agreement, the record does not show that the appellant in fact assisted her in exercising that right.

¶10    As to the May 23, 2014 memorandum objecting to HRM's response to the union's RFI, the administrative judge found that 5 U.S.C. § 2302(b)(9)(B) does not cover an RFI unless it was filed in direct support of a grievance or unfair labor practice complaint. ID at 18-21. The appellant argues that in so finding, the administrative judge read the statute too narrowly. PFR File, Tab 1 at 32. We disagree. As noted previously, for activity to be protected under 5 U.S.C. § 2302(b)(9)(B), an appellant must prove that he lawfully assisted another employee in "any appeal, complaint, or grievance right granted by any law, rule, or regulation," meaning that he took an initial step toward taking legal action against the agency for a perceived violation of employment rights. 5 U.S.C. § 2302(b)(9)(B); *Graves*, 123 M.S.P.R. 434, ¶ 18. Not every objection, gripe, or protest about a workplace matter constitutes the sort of complaint lodged in a formal adjudicatory process that is protected under 5 U.S.C. § 2302(b)(9)(B). *See Owen v. Department of the Air Force*, 63 M.S.P.R. 621, 624, 627-28 (1994) (finding that, although the appellant referred to his report to the Occupational Safety & Health Administration about his exposure to fumes as a "complaint," it was merely an informal "complaint" as the term is used to denote gripes or objections, rather than a complaint lodged in a formal adjudicative process, and thus it was not covered by 5 U.S.C. § 2302(b)(9)(B)); *see also Von Kelsch v. Department of Labor*, 59 M.S.P.R. 503, 505-06, 508 (1993) (concluding that filing a claim for compensation under the Federal Employees' Compensation Act was not the "exercise of any appeal, complaint, or grievance right" within the meaning of section 2302(b)(9)(B)), *overruled on other grounds by Thomas v.*

*Department of the Treasury*, 77 M.S.P.R. 224, 236 n.9 (1998), *overruled by Ganski v. Department of the Interior*, 86 M.S.P.R. 32 (2000). The appellant's objection to HRM's RFI response was part of the union's effort to obtain information regarding the PIPs of two bargaining-unit members, not a complaint lodged in a formal adjudicatory process. Conversely, the administrative judge correctly found protected the appellant's grievance, which he filed on the same date as the memorandum and which concerned the same subject matter. *See* ID at 17-18; IAF, Tab 40 at 32-33, Tab 40 at 66-67. Thus, the administrative judge properly determined that the appellant failed to establish that his May 23, 2014 memorandum separately constituted protected activity under 5 U.S.C. § 2302(b)(9)(B).

The administrative judge should conduct a new *Carr* factors analysis on remand.

¶11    We next turn to the question of whether the agency proved by clear and convincing evidence that it would have separated the appellant absent his protected activity. In determining whether an agency has met its burden, the Board will consider all relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who do not engage in such protected activity, but who are otherwise similarly situated. *Alarid*, 122 M.S.P.R. 600, ¶ 14; *see Carr*, 185 F.3d at 1323. The Board must consider all the pertinent evidence in the record, and must not exclude or ignore countervailing evidence by only looking at the evidence that supports the agency's position. *Alarid*, 122 M.S.P.R. 600, ¶ 14; *see Whitmore v. Department of Labor*, 680 F.3d 1353, 1367-70 (Fed. Cir. 2012).

¶12    This appeal presents an issue of first impression in that, as a reemployed annuitant, the appellant served at the will of the agency, and was not entitled to the procedural protections afforded under chapter 75 of title 5. *See* 5 U.S.C. § 3323(b)(1); *Garza v. Department of the Navy*, 119 M.S.P.R. 91, ¶ 7 (2012).

The administrative judge found that, in light of the appellant's at-will status, the analysis of the first *Carr* factor should be modified as follows:

> The critical inquiry for this *Carr* factor is the mindset of the agency official who separated the employee at the time the employee was separated. In this analysis, even if, upon subsequent investigation, the reasons the official separated a reemployed annuitant turn out to be unsupported, the agency may still prevail on this *Carr* factor if it can demonstrate by clear and convincing evidence that, at the time he or she took the action, the official's belief in the reasons warranting the employee's separation were objectively both reasonable and supportable.

ID at 38-39. On review, the appellant contends that the administrative judge erred in imposing the modified standard, and that the lack of due process protections for reemployed annuitants does not affect the agency's burden of persuasion under the clear and convincing test. PFR File, Tab 1 at 30-31.

¶13      For the following reasons, we decline to adopt the administrative judge's analysis. First, it is not correct to state that an agency may "prevail" on the first *Carr* factor, or that it must establish the strength of its reasons by any particular quantum of evidence. The Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole.[4]  *Alarid*, [122 M.S.P.R. 600](), ¶ 14; *Lu v.*

---

[4] For the same reason, the appellant is mistaken in his impression that the agency must prove the elements of its charges by clear and convincing evidence. PFR File, Tab 1 at 11. In a chapter 75 adverse action appeal involving an affirmative defense of whistleblowing reprisal, proof of the agency's charges may lend support to a finding that the agency proved by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosures or protected activity. *See Shibuya v. Department of Agriculture*, [119 M.S.P.R. 537](), ¶ 37 (2013) (finding that the administrative judge should reweigh the evidence on remand in light of the full Board's finding that the agency proved both of its charges). This does not imply, however, that proof of the alleged misconduct is either necessary or sufficient to satisfy the agency's overall burden, although it is relevant evidence that must be considered. *Id.* (reminding the administrative judge that on remand "all the relevant evidence as a whole" should be considered).

*Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). Furthermore, we agree with the appellant that the agency's burden of proof is not diminished by his at-will status. While it is true the appellant could have been lawfully separated with relative ease, it is not sufficient for the agency to establish that its action was justifiable; rather, the agency must show by clear and convincing evidence that it would have taken the *same* action in the absence of his protected activity. *See* 5 U.S.C. § 1221(e)(2); *Alarid*, 122 M.S.P.R. 600, ¶ 14; *cf. Whitmore*, 680 F.3d at 1374 (stating that "[t]he whistleblower statute is clear that even where the charges have been sustained and the agency's chosen penalty is deemed reasonable, the agency must still prove by clear and convincing evidence that it would have imposed the *exact same penalty* in the absence of the protected disclosures"). To that end, the agency has offered an explanation that relies on specific allegations of misconduct, and the strength of the evidence supporting those allegations does not turn on the procedural protections to which the appellant was entitled. *Cf. Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶¶ 30-31 (2013) (assessing the strength of the misconduct allegations underlying the appellant's probationary termination, notwithstanding the limited procedural protections afforded to probationary employees). We therefore find no basis for departing from the traditional analysis.[5]

_____

[5] In considering the first *Carr* factor, the Board assesses the evidence as it stood at the time of the action, and in light of what the agency officials knew at the time they acted. *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1372 (Fed. Cir. 2001). We agree with the appellant, however, that to focus exclusively on the actual beliefs held by the agency officials would be inconsistent with our obligation to consider all pertinent evidence. PFR File, Tab 1 at 31; *see Whitmore*, 680 F.3d at 1368. For example, if an agency official fails to investigate a charge sufficiently before bringing an action, such a failure might indicate an improper motive. *Social Security Administration v. Carr*, 78 M.S.P.R. 313, 335 (1998), *aff'd*, 185 F.3d 1318 (Fed. Cir. 1999). If, on the other hand, relevant facts are developed on appeal to the Board that the agency had no prior reason to know, we would find that such facts do not undercut the agency's otherwise sufficiently clear and convincing evidence that, at the time of

¶14        Turning to the second *Carr* factor, we agree with the administrative judge that the appellant's protected activities, taken in isolation, would not have created a strong motive to retaliate on the part of either the deciding official, who issued the decision to separate the appellant, or the HRM official who assisted the deciding official in taking that action.   ID at 48-49.   However, the Federal Circuit, the only circuit to have addressed this issue, has cautioned us against taking too narrow a view of the second *Carr* factor.[6]   In *Whitmore*, 680 F.3d at 1370, the court stated "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees." The court in *Whitmore* determined that, when a whistleblower makes highly critical accusations of an agency's conduct that draws the attention of high-level agency managers, the fact that an agency official is "outside the whistleblower's chain of command, not directly involved in alleged retaliatory actions, and not personally named in the whistleblower's disclosure is insufficient to remove the possibility of a retaliatory motive or retaliatory influence," and that the Board should consider any motive to retaliate on the part of the agency official who ordered the action, as well as that of any officials who influenced the action.  *Id.* at 1371.   In *Miller v. Department of Justice*, 842 F.3d 1252, 1261-62 (Fed. Cir. 2016), the court also instructed the Board not to limit its consideration of a

_____

the action, its decision would have been the same in the absence of the protected activity.  *Id.*

[6] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on this issue.  However, as a result of changes initiated by the Whistleblower Protection Enhancement Act of 2012 (Pub. L. No. 112-199, 126 Stat 1465), extended for 3 years (All Circuits Review Extension Act, Pub. L. No. 113-170, 128 Stat. 1894), and eventually made permanent (All Circuits Review Act, Pub. L. No. 115-195, 132 Stat. 1510), we must consider this issue with the view that the appellant may seek review of this decision before any appropriate court of appeal.  *See* 5 U.S.C. § 7703(b)(1)(B).

motive to retaliate to the appellant's supervisors, but to examine whether a retaliatory motive could be imputed more broadly. Similarly, in *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019), the court found that, although the deciding official did not have a personal motive to retaliate against the appellant for contradicting an agency Under Secretary, the Board's administrative judge erred by failing to consider whether he had a "professional retaliatory motive" against the appellant because his disclosures "implicated the capabilities, performance, and veracity of [agency] managers and employees, and implied that the [agency] deceived [a] Senate Committee."

¶15 In sum, the Federal Circuit's decisions instruct that, in assessing *Carr* factor two, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision, the Board and its administrative judges should avoid an overly restrictive analysis and should fully consider whether a motive to retaliate can be imputed to the agency officials involved and whether those officials possessed a "professional retaliatory motive," because the whistleblower's disclosures implicated agency officials and employees in general. In conducting this analysis, all of the record evidence relevant to whether there was a motive to retaliate and the extent of that motive must be considered.[7] *See Whitmore*, 680 F.3d at 1368 ("[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion").

¶16 In the instant case, we find that the administrative judge took too narrow an approach in his analysis of *Carr* factor two and failed to address all of the relevant record evidence. In particular, the appellant's protected activities take

---

[7] In *Robinson*, for example, the court noted that the administrative judge failed to discuss whether the deciding official had a "professional motive to retaliate," but ultimately decided that *Carr* factor two slightly favored the agency based on its conclusion that the administrative judge's crediting of the deciding official's testimony that he lacked a motive to retaliate was "not unreasonable." 923 F.3d at 1019-20.

on greater significance against the background of the tense relationship between the union and agency management in the Orlando office, which several witnesses described as "dysfunctional." Hearing Transcript (HT) (Jan. 13, 2016) at 42 (testimony of the deciding official); HT (Jan. 14, 2016) at 261 (testimony of the third level supervisor), 409 (testimony of the union president). In addition, in a March 20, 2014 email from the deciding official to the appellant concerning the proposed location of two third-step grievance meetings, the deciding official stated: "AFGE's unwillingness to cooperate on this issue is duly noted. I had hoped this didn't have to be such an adversarial relationship." IAF, Tab 51 at 14. Furthermore, the appellant's third-level supervisor had complained to the deciding official that the union was burdening the Orlando office by filing a large volume of complaints and RFIs that took up most of management's time. HT (Jan. 14, 2016) at 262, 264-66 (testimony of the third level supervisor). The administrative judge found that this evidence was not relevant because the deciding official and Chief of HRM did not view the activity as coming from the appellant in particular. ID at 46. However, it stands to reason that management's frustration with the volume of union activity could extend, to at least some degree, to the appellant's protected activities, which, though only a small portion of the whole, could nonetheless have been perceived as adding to the overall burden. This evidence of labor-management tension in the workplace may or may not support a conclusion that the second *Carr* factor weighs against the agency. However, by rejecting as irrelevant evidence of labor-management tension in the appellant's working environment, the administrative judge failed to consider all of the evidence potentially pertaining to motive.

¶17 Regarding the third *Carr* factor, we find that, contrary to the initial decision, the record does not definitively establish that the agency has taken separation actions against reemployed annuitants who engaged in misconduct and did not engage in protected activity under 5 U.S.C. § 2302(b)(9)(B). ID at 51. At the hearing, the HRM Chief testified that she had been involved in the separation

of 5 to 10 other reemployed annuitants, but she did not identify what positions those employees occupied or what conduct issues they may have had. HT (Jan. 29, 2016) at 84 (testimony of the HRM Chief). She further testified that, to her knowledge, none of them was "vice president to the union." *Id.* However, protected activity under 5 U.S.C. § 2302(b)(9)(B) is not solely the province of union vice presidents. Thus, while we agree with the administrative judge that the record contains no evidence that the agency does *not* separate reemployed annuitants who committed misconduct and did not engage in protected activity under 5 U.S.C. § 2302(b)(9)(B),[8] ID at 51, the record is incomplete regarding whether the agency does, in fact, take action against individuals who committed misconduct and did not engage in protected activity under 5 U.S.C. § 2302(b)(9)(B).

¶18    As the appellant correctly observes, it is the agency that bears the burden of proving that it would have taken the same action in the absence of his protected activity. PFR File, Tab 1 at 28; *see Alarid*, 122 M.S.P.R. 600, ¶ 14. While the agency does not have an affirmative burden to produce evidence concerning each and every *Carr* factor, the Federal Circuit has held that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis," but that the failure to produce such evidence if it exists "may be at the agency's peril," and "may well cause the agency to fail to prove its case overall." *Whitmore*, 680 F.3d at 1374-75. Moreover, because it is the agency's burden of

---

[8] The appellant identified another reemployed annuitant, also a GS-12 RSVR, who did not engage in whistleblowing or union activity, and who was placed on "second signature" as a result of performance problems relating to his failure to follow policy and procedures in rating claims. HT (Jan. 29, 2016) at 248‑50 (testimony of the appellant). However, while the third *Carr* factor requires that the Board take into account different kinds and degrees of conduct between otherwise similarly situated employees, *Whitmore* 680 F.3d at 1373-74, we find that a meaningful comparison cannot be drawn between the other reemployed annuitant's performance issues and the appellant's conduct.

proof, when the agency fails to introduce relevant comparator evidence, the third *Carr* factor cannot weigh in favor of the agency. *Smith v. General Services Administration,* 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). Here, the agency has introduced some comparator evidence, but its evidence is insufficient to show that the proffered comparators are in fact appropriate comparators. Under the circumstances, we find that the agency has failed to introduce complete, fully explained comparator evidence, the Federal Circuit's admonitions in *Smith* and *Siler* apply, and *Carr* factor 3 does not weigh in the agency's favor.[9]

¶19      In light of our findings above, we conclude that it is necessary to conduct a new analysis of the *Carr* factors. We further find that the administrative judge is in the best position to do so, having heard the live testimony. *See Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 37 (2013). Accordingly, we remand the appeal for a new finding as to whether the agency proved by clear and convincing evidence that it would have separated the appellant in the absence of his protected activity. The administrative judge may adopt his previous factual findings and credibility determinations as appropriate.[10]

---

[9] We recognize that there are different reasons why a record in a whistleblowing case might not contain relevant comparator evidence. Here, as in *Smith* and *Siler*, the reason is that the agency failed to make a sufficient proffer of such evidence. In another case, the agency may present persuasive evidence that no appropriate comparators exist. Until we are presented with that fact pattern, however, we need not decide that case.

[10] On remand, the administrative judge should address documentary evidence indicating that the agency issued a directive that Automated Standardized Performance Elements Nationwide records were not to be used in determining employee performance during the period from May through August 2014. IAF, Tab 34 at 16, ¶ 9. The administrative judge also may consider whether and to what extent the medical evidence concerning the union president might lead him to revise his assessment of her credibility.

**ORDER**

¶20     We remand the appeal to the Atlanta Regional Office for further adjudication consistent with this Opinion and Order.

FOR THE BOARD:

/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.