# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KHURSHID KHAN MUHAMMAD,
　　　　Appellant,

　　　　v.

DEPARTMENT OF VETERANS
　　AFFAIRS,
　　　　Agency.

DOCKET NUMBERS
DE-1221-15-0371-W-2
DE-1221-16-0182-W-1

DATE: February 21, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Khurshid Khan Muhammad, Artesia, California, pro se.

Tanya Burton, Bay Pines, Florida, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## REMAND ORDER

¶1　　　The appellant has filed a petition for review of the initial decision, which denied his requests for corrective action in these joined individual right of action (IRA) appeals. For the reasons discussed below, we GRANT the appellant's petition for review, AFFIRM the administrative judge's findings denying

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

corrective action concerning the alleged termination of his appointment, denial of work, and termination of his clinical privileges, and REMAND the appeals to the Denver Field Office for further adjudication regarding the appellant's request for corrective action concerning the alleged threat to terminate his appointment.

## BACKGROUND

¶2    The appellant filed a timely IRA appeal alleging that the agency retaliated against him for protected whistleblowing disclosures by threatening to terminate and then terminating his appointment in November 2014. *Muhammad v. Department of Veterans Affairs*, MSPB Docket No. DE-1221-15-0371-W-1, Initial Appeal File (0371 IAF), Tab 1. The appellant later filed a second IRA appeal alleging that the agency retaliated against him for protected whistleblowing disclosures when it terminated his clinical privileges and refused to assign him work. *Muhammad v. Department of Veterans Affairs*, MSPB Docket No. DE-1221-16-0182-W-1, Initial Appeal File (0182 IAF), Tab 1. The administrative judge joined the two appeals. *Muhammad v. Department of Veterans Affairs*, MSPB Docket No. DE-1221-15-0371-W-2, Refiled Appeal File (0371 RAF), Tab 3; 0182 IAF, Tab 7.

¶3    The first appeal arose from the appellant's October 20, 2014 appointment as a Fee Basis Physician at the New Mexico Veterans Affairs Healthcare System in Albuquerque, New Mexico. 0371 IAF, Tab 1 at 11; 0371 RAF, Tab 43 at 4. The appointment covered the period from October 20, 2014, through September 30, 2015, and provided that the appellant would receive $80.00 per patient visit.[2]

---

[2] Under 38 U.S.C. § 7405(a)(2)(A), the agency is authorized to employ medical providers on a fee basis. *See* 38 U.S.C. § 7401(1). The agency hires permanent, temporary, and "fee basis" physicians. Hearing Compact Disc (testimony of Executive Director, Primary Care Operations). Permanent staff physicians may be either full-time or part-time. *Id.* Locum tenens physicians are salaried staff physicians hired under temporary appointments and deployed to sites where the agency needs additional physicians. *Id.* Fee Basis Physicians are also temporary appointees, but they receive a set fee per visit or procedure rather than a salary and benefits. *Id.* Fee Basis Physicians

0371 RAF, Tab 43 at 4. The appointment letter listed a maximum utilization limit of $300,000 per year but stated that neither the agency nor the appellant was obligated to reach that limit. *Id.*

¶4    Before any physician begins employment at an agency facility, the agency's credentialing department must check his or her credentials and issue clinical privileges. Hearing Compact Disc (HCD) (testimony of credentialing Program Specialist). The credentialing department is also responsible for terminating clinical privileges for physicians who no longer work at the facility. *Id.* When a physician departs the facility, the agency conducts an exit interview, in which it documents the reason for the departure. *Id.* If a physician has been terminated for cause, the agency may be required to report such information to the appropriate state licensing board. *Id.*

¶5    For purposes of workload management, the agency typically assigns patients to panels. HCD (testimony of Associate Chief of Staff). Each panel is assigned to a physician, who serves as a point of contact for those patients. *Id.* When a physician leaves the facility, his patients are assigned to another physician. *Id.* Thus, existing panels may be divided among multiple physicians. *Id.* Agency physicians assigned a panel of patients are responsible for handling "view alerts" for those patients. *Id.* View alerts are electronic notifications and reports on a wide variety of events, including test and laboratory results and prescription refill requests. *Id.* Some view alerts may be urgent and require immediate action. *Id.*

¶6    The appellant began seeing patients on October 27, 2014. 0182 IAF, Tab 5 at 33; 0371 RAF, Tab 48 at 9. At some point during his first week, the agency assigned him a panel of 1,195 patients. 0182 IAF, Tab 1 at 8; 0371 RAF, Tab 48

---

are not paid for any administrative time or for duties that do not involve patient visits or procedures. *Id.*

at 9. On November 4, 2014, the Associate Chief of Staff for Ambulatory Care[3] at the facility sent him the following email message:

> I am working on re-arranging and re-distributing the panel you are covering. Would you have any interest i[n] continuing to work [Monday-Friday] for a short period of time, until I can get this done? If not, let me know what your ideal schedule is. Thx.

0182 IAF, Tab 5 at 23. The appellant alleged that he spoke with the Associate Chief of Staff by telephone later that day, in which he raised a patient safety issue regarding the assigned patient panel and he refused to participate in the unsafe medical practice of treating patients without seeing them. 0182 IAF, Tab 1 at 5. He claimed that she became angry and threatened to terminate his appointment. *Id*. at 5, 10-11, 15, 23; 0371 IAF, Tab 1 at 5, 11, 13-14; 0371 RAF, Tab 24 at 6. The appellant later sent an email message responding to her earlier email, indicating that he was unable to work full-time because of personal and family commitments. 0182 IAF, Tab 5 at 21-22. He offered to work 5 days per week on a temporary basis, but he enumerated several reasons why he should not be assigned a full panel of patients at that time. *Id*.

¶7      Specifically, the appellant explained that he did not want to receive a panel of patients because, given the temporary nature of his assignment, such patients would not have continuity of care. *Id*. at 21. He expressed concern that he would be "bombarded" with view alerts for patients he did not know and would not be able to see in the near future. *Id*. He also explained that any work he did involving patients he had not seen would be unremunerated because he was only paid for actual patient visits. *Id*. at 21-22. Finally, he indicated that he was already spending more than the 30 minutes typically allotted for each patient because he was generally seeing "older and very hi[gh] acuity patients that have not been seen for a while" and suffered from multiple medical conditions.

---

[3] The Associate Chief of Staff was in acting status when the events in this appeal transpired. She was later appointed to the position on a permanent basis. HCD (testimony of Associate Chief of Staff).

*Id*. at 22. The appellant then presented five options that would allow him to provide services to the agency while maintaining what he believed to be an acceptable level of patient safety. *Id*. Only one of these options involved assigning him a panel of patients, and he proposed that the panel be limited to 400 patients. *Id*. The appellant concluded, "If none of the above is workable then I am afraid I am unable to provide what you are expecting," in which case she could keep him on staff on an as needed basis for occasional needs. *Id*. He said he could continue to work for the next few days or weeks as needed but patients should be "unassigned" unless he had seen them. *Id*.

¶8      The Associate Chief of Staff responded: "This is fine. I am working on reassigning the patients. I[f] you would consider working the rest of this week, I would appreciate it. I do have a part-time position in Gallup[, New Mexico,] if you are interested." *Id*. at 21. The appellant thanked her and indicated that he would work the rest of the week, but he reiterated that he was not interested in the position in Gallup because of the commuting distance. *Id*. at 20. He asked if she wanted to retain him as a fee basis provider on an as-needed basis or if he would be terminated instead. *Id*. The Associate Chief of Staff responded: "Thank you for working the rest of the week. Will let you know about future needs." *Id*.

¶9      The appellant continued to see patients through Friday, November 7, 2014. *Id*. at 35. On Sunday, November 9, 2014, he emailed the Associate Chief of Staff to thank her for expediting his hiring process and to apologize for not being able to "help out the situation exactly as you expected." *Id*. at 26-27. He also stated that he had met another physician, who only came into the facility about once a month and saw only new patients. *Id*. at 27. He asked the Associate Chief of Staff whether a similar arrangement might be available to him. *Id*. She responded the next day: "I will let you know if we need you. Thanks." *Id*. at 26. Later that morning, an administrative officer assigned to the Associate Chief of Staff notified the facility credentialing office that the appellant's credentials were

being terminated and that he would no longer be working there as a Fee Basis Physician. *Id*. at 24.

¶10    On Tuesday, November 25, 2014, the appellant emailed the Associate Chief of Staff regarding his employment status. *Id*. at 31. In response, the Associate Chief of Staff told him she would "check [with] credentials and . . . email you back with the start/stop dates for accuracy." *Id*. at 30. After a brief exchange of messages, in which the appellant stated that he "was under the false impression of continued employment and privileges," the Associate Chief of Staff stated:

> You did not want the position offered and thus privileges were terminated. There was nothing adverse about it. Fee based providers are not the same as employees of the facility . . . . Privileges were terminated Nov 7 due to facility needs. . . . You[r] goals and [those] of the facility did not match.

*Id*. at 29. On January 9, 2015, the Associate Chief of Staff completed a Provider Exit Review form for the appellant indicating that he had been cleared from the facility on November 7, 2014, because he had resigned. *Id*. at 25. The form stated that the appellant "[m]et generally accepted standards of clinical practice, and there was no concern for the safety of patients." *Id*.

¶11    In January 2015, the appellant filed a complaint with the Office of Special Counsel (OSC), OSC File No. MA-15-1650, alleging that the agency retaliated against him for whistleblowing. 0371 IAF, Tab 1 at 8-20. In that complaint, he alleged that the agency first threatened to terminate, then terminated, his employment and clinical privileges because he disclosed to the Associate Chief of Staff his safety and other concerns about having to handle a large number of view alerts for patients he had not yet seen in person. *Id*. at 11-18. After OSC informed him that it was closing its investigation into his complaint, he filed a Board appeal. *Id*. at 5, 20-21. The administrative judge determined that the Board had jurisdiction over the IRA appeal and the appellant would be granted a hearing on the merits. 0371 IAF, Tab 7 at 2-3. During the processing of that appeal, however, the appellant learned that his appointment was still effective and

had not been terminated in November 2014. 0371 IAF, Tab 16 at 2; 0182 IAF, Tab 5 at 32. The administrative judge informed him that, if he wanted to raise a claim of whistleblower reprisal in connection with the agency's ongoing decision not to assign him any work under an existing appointment and the apparent continued suspension of his hospital privileges, he would need to exhaust those claims with OSC, as he had not done so in his existing OSC complaint. 0371 IAF, Tab 16 at 1-2, Tab 18. With the consent of both parties, the administrative judge dismissed the appeal without prejudice to refiling. 0371 IAF, Tab 21.

¶12    The appellant filed his second OSC complaint, OSC File No. MA-16-0722, in November 2015. 0182 IAF, Tab 1 at 8-29. Therein, he alleged that the Associate Chief of Staff stopped assigning him work after he disclosed to her that she was forcing him to take clinical actions regarding patients he had not yet seen and would not be able to see in the future. *Id*. at 9-12, 15-28. Such a practice, he alleged, was inherently unsafe and contrary to accepted standards of medical care. *Id*. at 10, 16. The appellant filed his second IRA appeal after OSC informed him that it was closing its investigation. *Id*. at 1-7, 29-30. The administrative judge then joined the two pending IRA appeals for adjudication. 0371 RAF, Tab 3; 0182 IAF, Tab 7.

¶13    After a hearing, the administrative judge issued an initial decision denying corrective action. 0371 RAF, Tab 61, Initial Decision (ID). The administrative judge found that the appellant made a protected disclosure when he disclosed to the Acting Associate Chief of Staff his belief that assigning him to a panel of over 1,000 patients would create a substantial and specific danger to public health and safety. ID at 11-13. The administrative judge found that, because the appellant's appointment itself was not terminated, he failed to prove his reprisal claim for that particular alleged personnel action. ID at 13 n.6. Applying the knowledge/timing test to the agency's decision to not assign him additional work and to terminate his clinical privileges, however, the administrative judge found

that the appellant established that his disclosure was a contributing factor in those other personnel actions. ID at 13-14. The administrative judge nevertheless found that the agency proved by clear and convincing evidence that it would have taken the same actions in the absence of his disclosure. ID at 14-20. The administrative judge thus denied his request for corrective action. ID at 21.

¶14    The appellant has filed a petition for review, primarily arguing that the administrative judge erred when deciding that the agency showed by clear and convincing evidence that it would have taken the same actions in the absence of any disclosure. Petition for Review (PFR) File, Tab 1 at 8-32.

## ANALYSIS

The administrative judge properly denied corrective action concerning the appellant's alleged termination, denial of additional work, and termination of clinical privileges.

¶15    On review, neither party has contested the administrative judge's findings that the appellant established a prima facie case of reprisal for whistleblowing in connection with the decision to not assign him additional work and to terminate his clinical privileges. We find no reason to disturb the administrative judge's findings on these issues. ID at 11-14.[4] If an appellant meets his burden of proof to show retaliation for whistleblowing, the agency may still prevail if it shows by clear and convincing evidence that it would have taken the same personnel action or actions in the absence of any protected disclosure. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 26 (2016). Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e). In determining whether an agency has shown by clear and convincing evidence that it would have taken the personnel action in the absence of the protected activity,

---

[4] Neither party contests the AJ's finding that the agency did not terminate the appellant's appointment in November 2014, and we find no reason to disturb it. ID at 13 n.6.

the Board will consider all of the relevant factors, including the following factors (*Carr* factors): (1) The strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).[5] The Board considers all the evidence, including evidence that detracts from the conclusion that the agency met its burden. *Soto*, 2022 MSPB 6, ¶ 11; *see also Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶16 The administrative judge considered all three *Carr* factors, finding the agency's evidence particularly compelling for the first two factors. ID at 14-20. Regarding the first *Carr* factor, the strength of the evidence in support of the agency's actions, the administrative judge concluded that the Associate Chief of Staff and the appellant may not have had the same understanding regarding the nature of services the agency needed and the extent to which the appellant was willing and able to provide those services. ID at 14-15. The administrative judge based this assessment on the Associate Chief of Staff's testimony that she declined to assign the appellant additional work and terminated his clinical privileges because she learned that he could not meet the agency's requirement for a physician who could cover a panel of more than 1,000 patients on a temporary basis. ID at 15.

---

[5] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues. However, pursuant to the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction. *See* 5 U.S.C. § 7703(b)(1)(B). Therefore, we must consider these issues with the view that the appellant may seek review of this decision before any appropriate court of appeal.

¶17    The administrative judge pointed out that the appellant's appointment letter did not specify a particular schedule or require that he serve a minimum number of hours each week. ID at 14; 0371 RAF, Tab 43 at 4. Additionally, the administrative judge explained, the appellant was offered the appointment by the Associate Chief of Staff's predecessor. ID at 14. The Associate Chief of Staff and another witness testified that her predecessor had hired the appellant on a full-time basis, but the appellant testified that he and the predecessor had agreed to a part-time schedule. ID at 14-15. The predecessor did not testify at the hearing. ID at 14 n.8. The administrative judge determined that any unmemorialized discussions about part-time work that may have occurred between the predecessor and the appellant had not been communicated to the new Associate Chief of Staff, and she genuinely believed that the appellant had committed to a full-time schedule. ID at 15. Conversely, the administrative judge added, the predecessor may have simply believed that the appellant would cover an entire panel of patients as a part-time physician because he had been willing to work a "flexible" schedule. ID at 15 n.9. In any event, the administrative judge concluded, the extent of the appellant's commitment to provide coverage and the agency's expectations were not documented in advance. *Id*.

¶18    Further, the administrative judge explained, the Associate Chief of Staff seemed reluctant to redistribute the patients from an existing panel because she believed a full-time physician would be available in the near future to cover the panel. ID at 15-16. The Associate Chief of Staff testified that the agency had recently hired a full-time staff physician to be assigned the panel, and the appellant was to have covered the panel temporarily while the agency resolved a credentialing delay for the new physician. *Id*. The administrative judge credited her testimony that she weighed the added cost of employing the appellant as a part-time fee basis provider against the benefit that would accrue to the agency

from his services and concluded it was not cost-effective to employ him if she had to break up an existing panel to do so. ID at 16.

¶19　　The administrative judge credited the Associate Chief of Staff's testimony that she terminated the appellant's clinical privileges because he would no longer be seeing patients and thus would not be subject to the monthly peer review process the agency used to reassess eligibility for privileges. *Id*. The administrative judge additionally credited her testimony that she did not assign the appellant work for the remainder of his appointment because she needed a full-time, rather than a part-time, physician. *Id*. Indeed, the administrative judge explained, the Associate Chief of Staff testified that she would have been willing to use the appellant on a full-time basis had he become available and, further, it would not have been unusual for the agency to restore his clinical privileges under such circumstances. ID at 17 & n.11.

¶20　　In considering the Associate Chief of Staff's testimony, the administrative judge applied the factors set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). ID at 17. In particular, the administrative judge found that her hearing testimony regarding the reasons she declined to assign the appellant additional work and terminated his clinical privileges was consistent with her contemporaneous statements and actions after she learned he was unable to work full-time and cover a full panel of patients. *Id*.; *see Hillen*, 35 M.S.P.R. at 458 (listing, among other factors for assessing credibility, the contradiction of the witness's version of events by other evidence or its consistency with other evidence). The administrative judge further found that the Associate Chief of Staff's willingness to allow the appellant to work the rest of the week after making his disclosure and her suggestion that he might take a part-time position in Gallup undermined his contention that she had acted from retaliatory animus. ID at 17; 0182 IAF, Tab 5 at 21.

¶21　　The appellant argues on review that the administrative judge should have examined the "obvious inconsistencies" between the Associate Chief of Staff's

prior statements and actions and her hearing testimony. PFR File, Tab 1 at 8. For instance, based on materials he obtained during discovery, the appellant argues that the agency was not seeking a full-time physician when he was hired and only needed coverage for 350 additional patients "with the opportunity to move up to about [ ] 1000 patients." PFR File, Tab 1 at 11-13; 0371 IAF, Tab 5 at 6-7. However, as the administrative judge explained, the Associate Chief of Staff testified that she had initially received inaccurate information about the size of the panel to be covered by a temporary Fee Basis Physician. ID at 14 n.7. The appellant has not identified any record evidence contradicting that testimony.

¶22    Next, the appellant asserts that the Associate Chief of Staff's testimony regarding termination of his privileges was disingenuous. PFR File, Tab 1 at 13-14. He argues that the record evidence shows that she instead had called into question his attitude towards patients and competence as a physician. *Id.* at 11-15; 0371 RAF, Tab 48 at 7. The interrogatory response the appellant cites in support of his argument states that two physicians had "expressed concern" to the Associate Chief of Staff about his performance. 0371 RAF, Tab 48 at 7. However, the same response also states that she had reviewed his charts in response to the concerns, and she determined that he met the facility performance standards. *Id.* Further, in the contemporaneous email exchange upon which the administrative judge relied, the Associate Chief of Staff assured the appellant she had acted because "[his] goals and that of the facility did not match." 0182 IAF, Tab 5 at 29. She explained that no adverse action had been taken against him and that she considered his credentials to be "solid." *Id.* at 29-30. On the Provider Exit Review form, she further certified that the appellant "[m]et generally accepted standards of clinical practice, and there was no concern for the safety of patients." *Id.* at 25. The appellant has not identified any record evidence that the agency held him in disregard. No unfavorable reports were made to outside parties. HCD (testimony of credentialing Program Specialist). Finally, the fact that the Associate Chief of Staff did not cancel the appellant's appointment and

suggested that he apply for the part-time position in Gallup supports the conclusion that his performance and attitude towards patients were not at issue.[6] 0182 IAF, Tab 5 at 21, 32.

¶23   The appellant asserts that the speed with which his clinical privileges were cancelled is "glaring proof of retaliation" and should have raised the administrative judge's suspicions. PFR File, Tab 1 at 28-30 (emphasis omitted). However, like the administrative judge, we find the Associate Chief of Staff's explanation of the agency's monthly peer review process to be consistent with the immediate cancellation of privileges. ID at 16. We have considered the appellant's alleged contradictory evidence regarding other part-time physicians with active privileges. PFR File, Tab 1 at 29. As explained below, we agree with the administrative judge's finding that they were not similarly situated. ID at 19-20. Considering the record as a whole, we find that the speed with which his clinical privileges were terminated under the circumstances is not a strong indicator of retaliatory motive and does not undermine the strong evidence supporting the nonretaliatory reasons for the agency's actions.

¶24   The appellant argued below and on review that the Associate Chief of Staff falsely stated that he resigned on the Provider Exit Review form, and by doing so, she sought to cover up the real reason for her actions. ID at 18; PFR File, Tab 1 at 6, 11, 16, 24-27. The administrative judge found that, given the available choices, it was reasonable for the Associate Chief of Staff to characterize the appellant's actions as a resignation. ID at 18. The administrative judge additionally explained that the characterization was harmless because the agency

---

[6] The appellant views both of these matters with suspicion. He asserts that the offer of a position in Gallup was the agency's "first attempt to avoid culpability" because he had not specified that location on his application. PFR File, Tab 1 at 15. He interprets the agency's noncancellation of his appointment as a "calculated move" to hide the real reason for its actions. *Id*. at 24. However, we find the agency's actions more indicative of a willingness to use the appellant's services at a later date if he had been available on the agency's terms.

only shares information from the Provider Exit Review form when it has identified concerns to report to state licensing boards and the agency had no such concerns in the appellant's case. ID at 18 & n.12. The administrative judge thus found no reason to conclude that the Associate Chief of Staff was trying to hide the real reason of retaliatory animus for her actions. ID at 18.

¶25 We agree. Although the appellant did not write a formal resignation letter, PFR File, Tab 1 at 24, his email messages to the Associate Chief of Staff clearly stated that he was unavailable to work under the conditions the agency was offering and that he knew his appointment might be terminated for that reason, 0182 IAF, Tab 5 at 20-22. Additionally, the form gives the exit interviewer limited options for describing the reason for a provider's departure. *Id*. at 25. Of the available options, "resigned" best describes the appellant's departure from the facility. In any event, the appellant was not disfavored by the agency's characterization of his departure as a resignation. When we consider all the pertinent evidence in the record, including that which might fairly distract from the conclusion, we thus find that the strength of the agency's evidence in support of its actions weighs in favor of a finding that it would have taken the same actions in the absence of any disclosure.

¶26 Regarding the second *Carr* factor, the existence and strength of any motive to retaliate on the part of the agency officials involved in the decisions at issue, the administrative judge acknowledged that the Associate Chief of Staff might have had some motive to retaliate against the appellant, but she found that such motive would not have been strong. ID at 18-19. The administrative judge explained that the 1,195-patient panel was consistent with the agency's safety guidelines, and there was no evidence that the appellant's disclosure had led to or would lead to any action being taken against the Associate Chief of Staff or any other person. ID at 19. Additionally, the administrative judge found the Associate Chief of Staff's immediate response to the disclosure—to ask the appellant if he would be willing to work for the rest of the week and to notify him

about an available part-time position—was inconsistent with a strong retaliatory motive. *Id.* Indeed, our reading of the email exchange between the appellant and the Associate Chief of Staff suggests that she may not have even perceived his concerns about the size of the panel to have been a disclosure. 0182 IAF, Tab 5 at 20-22.

¶27 However, we have found that those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, as the criticism reflects on them in their capacities as managers and employees. *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 65; *Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 28-29. However, in assessing *Carr* factor two, the Board and its administrative judges should avoid an overly restrictive analysis and should fully consider whether a motive to retaliate can be imputed to the agency officials involved and whether those officials possessed a "professional retaliatory motive," because the whistleblower's disclosures implicated agency officials and employees in general. *See Whitmore*, 680 F.3d at 1370-71. In conducting this analysis, all of the record evidence relevant to whether there was a motive to retaliate and the extent of that motive must be considered.[7] *See id.* at 1368; *Soto*, 2022 MSPB 6, ¶ 11.

¶28 In the instant case, we find that the administrative judge took too narrow an approach in her analysis of *Carr* factor two and placed too much emphasis on the fact that the appellant's immediate managers did not suffer any consequences as a result of his disclosures. However, there is no evidence in this case that the appellant's disclosures attracted the attention of high-level agency managers. In his petition for review, the appellant asserts that the lack of any justification for

---

[7] In *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019), for example, the court noted that the administrative judge failed to discuss whether the deciding official had a "professional motive to retaliate," but ultimately decided that *Carr* factor two slightly favored the agency based on its conclusion that the administrative judge's crediting of the deciding official's testimony that he lacked a motive to retaliate was "not unreasonable." *Robinson*, 923 F.3d at 1019-20.

the personnel action at issue and the speed with which the agency imposed it following his disclosure proves retaliatory motive. As discussed above, the administrative judge thoroughly considered and rejected the appellant's arguments that the agency's reasons for taking the personnel action were not reasonable or credible, and the appellant has not otherwise proffered any reason why the administrative judge's findings concerning the second *Carr* factor were incorrect. We find, therefore, that the administrative judge properly concluded that the agency's motive to retaliate was slight.

¶29     As for the third *Carr* factor, the agency has not identified any evidence that it took similar actions against employees who are not whistleblowers. The appellant reiterates his argument regarding other Fee Basis Physicians who were treated differently. PFR File, Tab 1 at 19-20, 29-31. However, the administrative judge found that not all Fee Basis Physicians are similarly situated employees. ID at 19. Instead, she found that the agency appointed Fee Basis Physicians under individualized arrangements to meet specific needs. *Id*. For example, one of the other fee basis providers was hired to see patients at a Saturday clinic, to see new patients and walk-ins on other days, and to cover for other physicians as her schedule allowed. ID at 19-20. She testified that she would not have taken a full-time position had one been offered and that she negotiated the specific terms of her appointment before accepting the position. ID at 20. The administrative judge found that such physicians were not similarly situated to the appellant and the evidence regarding their conditions of employment would not be persuasive under the third *Carr* factor. *Id*. The appellant has not identified any evidence in the record that suggests he negotiated the arrangement he believed he had in advance of accepting an appointment. When there is no relevant comparator evidence, the third *Carr* factor is effectively removed from consideration, although it cannot weigh in favor of the agency. *Soto*, 2022 MSPB 6 ¶ 18; *see also Rickel v. Department of the Navy*, 31 F.4th 1358, 1365-66 (Fed. Cir. 2022). We find that this factor is neutral.

¶30    If the first two *Carr* factors are only supported by weak evidence, the failure to present evidence of the third *Carr* factor may prevent the agency from carrying its overall burden. *Smith*, 2022 MSPB 4, ¶ 30; *see also Miller v. Department of Justice*, 842 F.3d 1252, 1262-63 (Fed. Cir. 2016) (where an agency presented little or weak evidence for the first two *Carr* factors, the lack of *Carr* factor three evidence "if anything[ ] tends to cut slightly against the government"). Here, based on the entire body of evidence, the administrative judge found that the agency showed by clear and convincing evidence that the Associate Chief of Staff would have terminated the appellant's clinical privileges and not assigned him additional work in the absence of his disclosure. ID at 20. We have considered the appellant's arguments and agree that his inability to meet the agency's workload and scheduling expectations after he was appointed, rather than his protected disclosure, led to the termination of his clinical privileges and the agency's decision not to assign him additional work. Accordingly, we affirm the findings in the initial decision.

<u>The administrative judge must make findings on the appellant's request for corrective action regarding the alleged threat to terminate his appointment.</u>

¶31    The administrative judge did not make findings on the merits for every personnel action that she found to be within the Board's jurisdiction. In his first whistleblower complaint, OSC File No. MA-15-1650, the appellant alleged that the agency first threatened to terminate him, then terminated his employment and clinical privileges after he made his disclosure to the Associate Chief of Staff. 0371 IAF, Tab 1 at 11-18. He references this alleged verbal threat several times in his petition for review. PFR File, Tab 1 at 5, 15, 25. A threatened personnel action may be a basis for the Board's jurisdiction in an IRA appeal. *See* 5 U.S.C. § 2302(b)(8); *see, e.g.*, *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶¶ 24-27 (2015) (finding that the administrative judge erred in failing to reach the merits of whether the appellant's protected disclosure was a contributing factor in the agency's decision to threaten to take a personnel action against him). The

administrative judge here found that the appellant made a nonfrivolous allegation that the agency threatened termination of his employment in response to his alleged protected disclosure.  0371 IAF, Tab 7 at 2-3.  He is thus entitled to a decision on the merits of that claim.  *Mastrullo*, 123 M.S.P.R. 110, ¶ 26.

## ORDER

¶32      For the reasons discussed above, we remand these appeals to the Denver Field Office for further adjudication in accordance with this Remand Order.[8]

FOR THE BOARD:             /s/ for

                                      Jennifer Everling
                                      Acting Clerk of the Board

Washington, D.C.

---

[8] As explained above, we affirm the administrative judge's findings with respect to the personnel actions at issue in MSPB Docket No. DE-1221-16-0182-W-1.  However, in order to efficiently process these appeals, which are based upon the same intertwined facts, we remand both appeals.  *See* 5 C.F.R. § 1201.117(a)(5).  The administrative judge should incorporate her earlier findings concerning the alleged termination of the appellant's appointment, denial of work, and termination of the appellant's clinical privileges into the remand initial decision and provide review rights for both appeals.