## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| LYNETTE TILLMAN-JOHNSON, <br> Appellant, | DOCKET NUMBER <br> DA-1221-22-0388-W-1 |
| v. | |
| DEPARTMENT OF HOUSING AND <br> URBAN DEVELOPMENT, <br> Agency. | DATE: June 14, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Andrew B. Henson, Esquire, Decatur, Georgia, for the appellant.

Marcus R. Patton, Esquire, Anju V. Mathew, Esquire, Sakeena M. Adams, Esquire, and Mary C. Merchant, Esquire, Fort Worth, Texas, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and
did not participate in the adjudication of this appeal.

### FINAL ORDER

¶1    The agency has filed a petition for review of the initial decision, which granted corrective action in this individual right of action (IRA) appeal.

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the agency has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2      On September 4, 2018, the agency appointed the appellant to the position of GS-13 Senior Account Executive (SAE), subject to a 1-year initial probationary period.  Initial Appeal File (IAF), Tab 1 at 7.  The appellant was responsible for overseeing the performance of a portfolio of multifamily housing properties under the agency's purview.  IAF, Tab 8 at 52, Tab 22 at 25.  As a part of her job duties, she was required to monitor the properties assigned to her portfolio for changing financial circumstances, including by reviewing and approving changes to lease requests, loan terms or modifications, changes in property management, and other project-related requests.  IAF, Tab 22 at 26.  As an SAE, the appellant served as the primary point of contact with owner management agents, tenants, and Federal, state, and local governments for the projects assigned to her.  *Id*.  As such, she was tasked with "negotiat[ing] formal agreements on behalf of" the agency, and

with "insuring [sic] that all executed agreements are monitored in accordance with established policies and procedures." *Id.*

¶3 On August 4, 2022, the appellant filed an IRA appeal, claiming that the agency reassigned her, terminated her employment, and took several other personnel actions against her in retaliation for protected whistleblowing. IAF, Tabs 1, 5. She waived her right to a hearing. IAF, Tab 17. After the close of the record, the administrative judge issued an initial decision granting the appellant's request for corrective action with respect to both the reassignment and the termination. IAF, Tab 31, Initial Decision (ID) at 1, 30. The agency has filed a petition for review, and the appellant has filed a response. Petition for Review (PFR) File, Tabs 1, 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

The appeal was timely.

¶4 Under 5 U.S.C. § 1214(a)(3)(A), an appellant may file an IRA appeal with the Board once the Office of Special Counsel (OSC) closes its investigation into her complaint and no more than 60 days have elapsed since notification of the closure was provided to her. Under the Board's regulations implementing that statutory time limit, an IRA appeal must be filed no later than 65 days after the date that OSC issues its closeout letter, or, if the letter is received more than 5 days after its issuance, within 60 days of the date of receipt. 5 C.F.R. § 1209.5(a)(1).

¶5 In this case, the appellant received OSC's closeout letter on May 31, 2022— the date it was issued, and so the filing deadline was August 4, 2022. IAF, Tab 3 at 3, Tab 8 at 46-47. The appellant filed her appeal on that date. IAF, Tab 1. However, it appeared from the appellant's initial appeal form that she was appealing her probationary termination directly, and it was not until 5 days later that the appellant clarified that she intended to file an IRA appeal. IAF, Tab 1, Tab 2 at 3-5, Tab 3 at 3. Based on these facts, the agency argues that the

appellant filed her IRA appeal outside the statutory deadline and that the appeal should be dismissed as untimely. PFR File, Tab 1 at 6-7.

¶6        We have considered the agency's argument, but we disagree. The agency has provided no precedent in support of its position on timeliness. There is no support in the statute or regulations for the Board to construe the date on which the appellant clarified the nature of her appeal as the date that she filed her appeal. Furthermore, even if it could be argued that this pro se appellant's initial filing was defective, her filing of a timely but defective pleading would provide a sufficient basis to toll the statutory deadline.[2] *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990) (holding that equitable tolling may be invoked when a party "has actively pursued his judicial remedies by filing a defective pleading during the statutory period").

The appellant proved her case in chief.

¶7        In the merits phase of an IRA appeal, the appellant must prove by preponderant evidence that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

¶8        In this case, the administrative judge found that the appellant made five disclosures that were protected on the basis that the appellant reasonably believed that they concerned a violation of law, rule, or regulation: (1) on October 11, 2018, the appellant disclosed to her former first-line supervisor that the agency had abandoned or failed to properly inspect and service certain properties; (2) on

---

[2] The Board has never squarely decided the issue of whether the deadline at 5 U.S.C. § 1214(a)(3)(A) is subject to equitable tolling. However, we see no reason to doubt that it is. *See generally Boechler v. Commissioner of Internal Revenue*, 596 U.S. 199, 209 (2022) (holding that non-jurisdictional filing deadlines are presumptively subject to equitable tolling).

October 12, 2018, she followed up by making the same disclosure to her third-line supervisor; (3) on October 15, 2018, she reported to her first-line supervisor that an agency official was retaliating against her for protected whistleblowing by instructing other employees not to assist her with her portfolio; (4) on December 14, 2018, she reported to her first-line supervisor that the agency failed to ensure that property inspections were being conducted and that repairs were being documented; and (5) on December 11 and 19, 2018, she reported to her first-line supervisor that the agency failed to ensure that mandatory contract terms were being included in management agreements. ID at 8-19. On petition for review, the agency contests the administrative judge's findings on these disclosures, except for Disclosure 3. For the reasons explained in the initial decision, we agree with the administrative judge that the appellant made Disclosure 3 and that her disclosure was protected. ID at 17.

*Disclosures 1 and 2*

¶9 Regarding Disclosures 1 and 2, the agency disputes the administrative judge's findings about the content of these disclosures, arguing that they are not supported by the record. PFR File, Tab 1 at 7-8. For the first time on review, the agency has submitted an October 11, 2018 email that it postulates is Disclosure 1, and argues that this email contains no allegation of failure to service properties, property abandonment, missing inspections, or exigent health and safety issues. *Id*. at 7 n.21, 13-15.

¶10 However, even considering the agency's late-filed evidence, we find that it does not warrant a different outcome in this appeal for two reasons. First, the administrative judge's findings about the content of these disclosures were not based on this one email alone, but on "multiple reports" to the appellant's supervisors that the agency was failing to ensure proper servicing of portfolios, including on October 11 and 12, 2018, when she indicated that the properties "had been abandoned." ID at 8. The administrative judge noted that the

appellant disclosed the content of Disclosures 1 and 2 by providing evidence that the property files had not been updated prior to the properties being transferred to her portfolio. ID at 8-9. The administrative judge also credited the appellant's deposition testimony, in which the appellant stated that she reported the lack of servicing issues to her supervisors, over the declaration of one of those supervisors who "only generally stat[ed]" that she did not recall the appellant alleging that the agency was violating any laws, rules, or regulations. The administrative judge observed that the supervisors did not specifically deny that the appellant reported that the agency was failing to service the properties. ID at 9-10. We therefore cannot agree with the agency's suggestion that the October 11, 2018 email was all there was to Disclosures 1 and 2.

¶11 Second, even if the Board restricted its examination to the email itself, there would be sufficient evidence to support the administrative judge's findings. Although the email does not explicitly reference property abandonment, missing inspections, or any exigent health and safety items, it identifies the last date that inspections were completed for each of the three identified properties, notes that each of the properties were lacking action plans, and identifies that each of the properties had been in the same condition for the past 3 months. PFR File, Tab 1 at 13-15. Contextually understood, this email supports the administrative judge's finding that the appellant could have reasonably believed that, by identifying these repeated failures to properly service properties in her portfolio, she was disclosing that the properties had been "abandoned," and that this inaction constituted a violation of agency rules or regulations governing the proper servicing of the properties. ID at 9-10.

¶12 In finding that Disclosures 1 and 2 met the "reasonable belief" standard, the administrative judge considered an internal report of investigation (ROI), which stated that numerous properties in the appellant's portfolio had not been inspected as scheduled, and health and safety remediation had not been properly

documented, in violation of 24 C.F.R. § 200.857(b)(1) and (c)(2).[3] ID at 10-11; IAF, Tab 8 at 49-67. The agency argues that, because the appellant failed to specifically identify many of the properties discussed in the ROI, it was "improper for the [administrative judge] to assume that the ROI was based on information [that the appellant] had available to her at the time of her disclosures." PFR File, Tab 1 at 8. However, the ROI was produced at OSC's direction as a direct result of the appellant's whistleblowing complaint, and the scope of the agency's investigation was specifically limited to the properties in the appellant's portfolio. IAF, Tab 8 at 44-45, 51, 54. Additionally, each of the three properties that the appellant identified in her October 11, 2018 email was referenced in the ROI. PFR File, Tab 1 at 13-15; IAF, Tab 8 at 60. Finally, the appellant also provided OSC with a contemporaneously prepared spreadsheet of her correspondence with agency managers concerning the inadequate servicing of her properties, including Disclosures 1 and 2. IAF, Tab 8 at 23, Tab 22 at 5-6. Consequently, it can be reasonably inferred that the findings in the ROI were based, at least in part, on information that the appellant had about her properties when she originally made her disclosures. ID at 11. In any event, it is immaterial whether the specific properties that the ROI identified as deficient were the same properties that the appellant identified in Disclosures 1 and 2. As the administrative judge correctly noted, the appellant was only required to establish that she reasonably believed that her disclosures evidenced one of the categories of wrongdoing identified in 5 U.S.C. § 2302(b)(8). PFR File, Tab 4 at 5-6; ID at 11-12.

¶13     The agency next argues that the appellant did not have a reasonable belief that it was violating 24 C.F.R. § 200.857(b)(1) by not conducting monthly inspections because the regulation does not require monthly inspections. PFR File, Tab 1 at 10. However, even if the appellant was mistaken about how

---

[3] After the initial decision was issued, 24 C.F.R. § 200.857 was removed and reserved, effective October 1, 2023. *See* 88 Fed. Reg. 30442, 30498 (May 11, 2023).

frequently inspections were required, as explained in the ROI, she was still correct that the agency was not conducting inspections frequently enough. The agency also argues that the appellant did not have a reasonable belief that it had violated 24 C.F.R. § 200.857(c)(2) because property owners, and not the agency, are required to make health and safety repairs. PFR File, Tab 1 at 10. However, it is undisputed that the agency failed to hold property owners to the required remediation timelines for a significant number of the properties in the appellant's portfolio. ID at 10-11; IAF, Tab 8 at 54-55. Further, even if the purported wrongdoing primarily involved non-agency officials, the Board has held that a disclosure of wrongdoing committed by a non-Federal Government entity may nevertheless be protected when the Government's interests and good name are implicated in the alleged wrongdoing, and the employee shows that she reasonably believed that the information she disclosed evidenced that wrongdoing. *See Covington v. Department of the Interior*, 2023 MSPB 5, ¶ 16; *Arauz v. Department of Justice*, 89 M.S.P.R. 529, ¶¶ 6-7 (2001). Regardless of which party was responsible for conducting the actual repair work, we find that the Government's interests and good name are implicated in the appellant's disclosures. In sum, we agree with the administrative judge that the appellant reasonably believed that she was disclosing violations of agency regulations in connection with Disclosures 1 and 2. ID at 8-12.

*Disclosure 4*

¶14 Regarding Disclosure 4, the administrative judge credited the appellant's deposition testimony that, on December 14, 2018, she disclosed that the agency had failed to adequately service her properties prior to them being assigned to her, including by failing to complete inspections and ensure that repairs were being properly documented. ID at 9 (citing IAF, Tab 23 at 32-33, 54-55). The agency argues that there is insufficient evidence to prove that the appellant's December 14, 2018 disclosure was protected. PFR File, Tab 1 at 8. Specifically,

the agency argues that there is no evidence that the appellant disclosed property inspection and repair documentation failures, and that the administrative judge improperly relied on the ROI in finding that she did. *Id.* We disagree.

¶15    Because the administrative judge's findings are based on the written record, the Board is free to reweigh the evidence and make its own findings without deferring to her credibility findings. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1302 (Fed. Cir. 2002). We have reviewed the record and find that the administrative judge properly weighed the evidence, including by considering the consistency of the appellant's statements with other evidence in the record, such as the ROI and the appellant's prior emails detailing the concerns underlying Disclosure 4. ID at 8-12; *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (setting forth various factors relevant to credibility determinations); *see also Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981) (explaining the factors that affect the weight of hearsay evidence). In her deposition, the appellant specifically stated that she informed her first-line supervisor, by email and in person, that the properties had problems with inspection and repair documentation. IAF, Tab 23 at 54-55. The appellant further testified that she had regular meetings with her supervisor during which she discussed numerous issues with the properties in her portfolio, and that she discussed the inspection and repair issues during a December 14, 2018 meeting with her first-line supervisor. IAF, Tab 23 at 55.

¶16    Regarding the agency's argument that the administrative judge improperly relied on the findings in the ROI, the administrative judge considered the ROI as evidence that the appellant's disclosures concerned a violation of regulation—not as evidence that she made the disclosures as alleged. ID at 10-11. It was appropriate for the administrative judge to cite the findings of the ROI, as it gave context to the appellant's disclosures by clarifying the proper process and timeline for completing inspections and repairs, and the ROI acknowledged that the timelines for both requirements regularly were not met for properties in the

appellant's portfolio.  ID at 10-11; IAF, Tab 8 at 53-55.  For these reasons, we agree with the administrative judge that the appellant made Disclosure 4 as alleged, and that the disclosure concerned violations of agency regulation.

*Disclosure 5*

¶17    Regarding Disclosure 5, the appellant informed her first-line supervisor on December 11 and 19, 2018, that certain management agreements were missing clauses required by the agency's handbook.  ID at 11-12; IAF, Tab 22 at 58-59.  The administrative judge found that the appellant reasonably believed that this disclosure evidenced a violation of law, rule, or regulation.  ID at 12.  On review, the agency argues that its handbook does not amount to a "law, rule, or regulation" within the meaning of 5 U.S.C. § 2302(b)(8).  PFR File, Tab 1 at 10-11.  However, to construe the appellant's disclosures of purported handbook violations as protected only if the handbook has the force of law—i.e., a statute or substantive regulation, as the agency suggests—would render the term "rule," as provided under section 2302(b)(8)(A)(i), superfluous.  *See Department of Homeland Security v. MacLean*, 135 S. Ct. 913, 918-21 (2015) (finding that, by using the phrase "law, rule, or regulation" to describe protected disclosures, while using the word "law" to describe excepted disclosures, Congress intended to exclude disclosures that violated rules or regulations from excepted disclosures).  Instead, the Board has defined a rule as "an established and authoritative standard or principle; a general norm mandating or guiding conduct or action in a given type of situation."  *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶ 16 (2002) (quoting Black's Law Dictionary 1330 (7th ed. 1999)).  For the reasons explained in the initial decision, we agree with the administrative judge that the agency's handbook amounts to a "rule" for purposes of 5 C.F.R. § 2302(b)(8).  ID at 12 n.5; IAF, Tab 23 at 116

¶18    The agency also argues that nothing in the appellant's December 11, 2018 email evidenced a violation of its handbook.  PFR File, Tab 1 at 9.  We disagree.

The appellant's email specifically stated that one of her management contracts was missing required clauses, and she proposed to notify the agent. IAF, Tab 22 at 58-59. She also specifically cited a provision of the handbook that required such language in the agreements. *Id.* The appellant's first-line supervisor disregarded her concerns and directed her not to send the email. *Id.* at 58. As the administrative judge noted, the ROI acknowledged that management agreements are required to reference required contract clauses upon renewal or when appropriate, citing the exact same handbook provision as the appellant referenced to her supervisor. IAF, Tab 8 at 63 & n.46. Properly and contextually understood, the appellant was attempting to disclose to her supervisor that the agreement did not have the required contract language and that the absence of that language was contrary to the requirements of the handbook. ID at 12.

¶19    The agency further argues that the ROI determined that there were "no compliance issues regarding expired management contracts in this instance," noting that, for this property, the management agreement allowed for automatic renewal and had not yet expired, and thus, the agency did not violate the handbook provisions by not requiring the owner to amend the management agreement. PFR File, Tab 1 at 9; IAF, Tab 8 at 63. This is an oversimplification of what the ROI said about this matter. Although the ROI determined that there were no compliance issues regarding "expired management contracts," the ROI also addressed the appellant's concern in Disclosure 5 that the existing management agreement failed to include required termination rights provisions. IAF, Tab 8 at 62 ("According to Claimant, MFHSW Branch Chief Managers failed to adhere to this requirement by not addressing expired or missing management certifications *and by not requiring that management agreements include required contract clauses related to fees and termination rights*.") (emphasis added). Although the ROI suggests that the failure to include the required language concerning termination rights did not result in "loss to HUD" in this instance, the ROI does note that best practices would require the agency to

reference required contract clauses in management agreements "upon contract renewal or when appropriate," which would "strengthen Owner's ability to terminate the management agent agreement at will or at the direct of HUD." *Id.* at 63. Thus, the ROI supports the appellant's concerns in Disclosure 5 that the agency violated its rules or regulations by failing to include the termination clauses.

¶20    In any event, even if the absence of the required termination clause was not actually in violation of the agency handbook, Disclosure 5 would still be protected. An individual making a disclosure is protected from retaliation for whistleblowing based on her reasonable belief that her disclosure evidenced one or more of the categories of wrongdoing listed in 5 U.S.C. § 2302(b)(8), even when her belief is mistaken. *Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 24 (2015), *aff'd*, 652 F. App'x 971 (Fed. Cir. 2016). The test for determining whether an individual's belief is reasonable is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidence the wrongdoing disclosed. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). We agree with the administrative judge that the appellant reasonably believed that Disclosure 5 evidenced a violation of an agency rule or regulation, and whether the ROI confirmed that belief is ultimately immaterial to this finding. ID at 11.

¶21    Finally, the agency argues that, even if some management agreements failed to comply with the requirements set forth in the agency handbook, the owners and managers of the subject properties were the noncompliant parties, not the agency, and the Board has held that disclosures of wrongdoing by private, nongovernmental entities do not constitute protected disclosures for the purposes of 5 U.S.C. § 2302(b)(8). PFR File, Tab 1 at 9-10. We disagree because the substance of Disclosure 5 was that the agency was violating its own rules and regulations by failing to ensure that entities it oversaw included required contract

terms in their management agreements—not that the management agents and owners were themselves violating a law, rule, or regulation. IAF, Tab 20 at 2-3.

¶22 Further, given the oversight functions that the agency exercised over the management agents and owners, the agency's failure to enforce compliance with the regulatory requirements that governed the relationship between the agency and the management agents and owners could implicate the Government's interests and good name. *See Arauz*, 89 M.S.P.R. 529, ¶ 7 (finding that the appellant's disclosure regarding alleged wrongdoing by a private organization was protected when the agency was in a position to influence or exercise oversight over the organization's performance of the challenged functions, such that the Government's "interests and good name" were implicated in the wrongdoing). Accordingly, we conclude that even if Disclosure 5 evidenced only wrongdoing by nongovernmental parties, the appellant's disclosure was nevertheless protected because it implicated the Government's interests and good name.

The agency did not prove its affirmative defense.

¶23 If the appellant proves that her protected disclosure or activity was a contributing factor in a personnel action taken against her, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity.[4] *Soto v. Department of Veterans Affair*s, 2022 MSPB 6, ¶ 6; *see* 5 U.S.C. § 1221(e)(1)-(2). In determining whether an agency has met this burden, the Board will consider all of the relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar

---

[4] The agency does not contest the administrative judge findings on contributing factor, and for the reasons explained in the initial decision, we agree with the administrative judge that the appellant proved that part of her case. ID at 19-23.

actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Soto*, 2022 MSPB 6, ¶ 11. The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 24. Additionally, the Board will consider all the evidence presented, including evidence that detracts from the conclusion that the agency met its burden. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012); *Soto*, 2022 MSPB 6, ¶ 11.

¶24 In her initial decision, the administrative judge found that the agency did not demonstrate strong reasons for taking the personnel actions, the officials involved had considerable retaliatory motive, and there was no evidence concerning the agency's treatment of similarly situated non-whistleblowers. ID at 24-25. Considering the evidence as a whole, she found that the agency did not prove by clear and convincing evidence that it would have reassigned and terminated the appellant even absent her protected disclosures. *Id.* On review, the agency argues that the administrative judge failed to consider evidence of two other employees who also reported violations of the agency's handbook to the appellant's first-line supervisor but who were not disciplined. PFR File, Tab 1 at 11. It argues that the first-line supervisor's failure to take disciplinary action against these employees despite their expressed disagreement demonstrates that it was not the appellant's whistleblowing activity that motivated the first-line supervisor to take the contested personnel actions. *Id.*

¶25 The agency is correct that evidence regarding similarly situated whistleblowers may be relevant to the second *Carr* factor. *See Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). Nevertheless, we find no reason to disturb the administrative judge's analysis of the second *Carr* factor on this basis. In finding that the second *Carr* factor

weighed in the appellant's favor with respect to both personnel actions, the administrative judge observed that the appellant's disclosures about the agency's abandonment of properties revealed "real and significant problems" about how properties within the agency's portfolio were being managed, as later validated by the ROI. ID at 24-25. The administrative judge reasoned that the appellant's detailing of the agency's failures would have reflected poorly on her first- and third-level supervisors, both of whom were aware of the appellant's disclosures but did not take action to remedy the issues she identified, and thus they would have been motivated to retaliate. ID at 24-25, 29; *see Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019) (considering under the second *Carr* factor whether there was a professional motive to retaliate); *see also Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 65 (finding that officials responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, as the criticism reflects on them in their capacities as managers and employees); *Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 28-29. By contrast, the parties stipulated only that the two employes at issue "expressed their disagreement" with the appellant's first-line supervisor that the agency was consistently following the handbook. IAF, Tab 23 at 8. There is no additional information in the record concerning the nature of this "disagreement" or whether the two employees' expression of disagreement rose to the level of the appellant's whistleblowing activity. Accordingly, we conclude that the administrative judge properly weighed the *Carr* factors in finding that the agency failed to meet its burden. For the foregoing reasons, we deny the agency's petition for review and affirm the initial decision.

**ORDER**

¶26      We ORDER the agency to cancel the appellant's termination and to restore the appellant effective March 14, 2019.[5] *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶27      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶28      We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶29      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

---

[5] The administrative judge found, and the parties do not dispute, that there is no corrective action available to correct the appellant's reassignment. ID at 30. Nevertheless, the circumstances of this personnel action may be relevant to assessing damages.

¶30    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable

expert witness fees, and costs, 5 U.S.C. § 1214(g)(2), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE PARTIES

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[6]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    _____
                                 Gina K. Grippando
                                 Clerk of the Board
Washington, D.C.



| | **DEFENSE FINANCE AND ACCOUNTING SERVICE** |
| | **Civilian Pay Operations** |

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.