**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| LUIS MANUEL RIOS, | DOCKET NUMBER |
| Appellant, | DC-1221-22-0033-W-1 |
| v. | |
| DEPARTMENT OF DEFENSE, | DATE: August 19, 2024 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Alysa Williams, Esquire, and Heather White, Esquire, Washington, D.C.,
　for the appellant.

John S. Chamblee, Esquire, Peachtree City, Georgia, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact;

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to (1) correct the administrative judge's exhaustion findings concerning the appellant's alleged Office of the Inspector General (OIG) complaint and the OIG investigation, (2) supplement the administrative judge's analysis of the appellant's equal employment opportunity (EEO) complaint, (3) clarify that the appellant's disclosure regarding alleged discriminatory hiring practices could not have constituted a protected disclosure under 5 U.S.C. § 2302(b)(8) because it concerned Title VII violations, (4) find a modest retaliatory motive on the part of the relevant agency official and that the agency presented insufficient evidence of a similarly situated employee, and (5) otherwise clarify the administrative judge's clear and convincing analysis, we AFFIRM the initial decision.

## BACKGROUND

The appellant is employed as a Teacher at the Quantico Middle High School (QMHS), with the Department of Defense Education Activity (DoDEA) Americas Mid-Atlantic District, Department of Defense, in Quantico, Virginia. Initial Appeal File (IAF), Tab 1 at 8, 14. On August 2, 2018, the appellant sent an email to his second-level supervisor, then the Mid-Atlantic District Superintendent, alleging that there "seem[ed] to be a discriminatory pattern" in

the way his first-level supervisor, the QMHS Principal, was hiring teachers and personnel after the former Assistant Principal retired. IAF, Tab 9 at 13. The appellant claimed that, during the prior 12-month period, "all new hires have been African American" except for two local internal transfers. *Id.* The appellant stated that he was concerned about "reverse discrimination" and that this looked "like a discriminatory federal prohibited practice," *id.*, and added that "[c]onsidering that [the QMHS Principal] is also African American this should raise a flag about the kind of issues we are having at QMHS," *id.* at 14.

On August 14, 2018, the appellant filed a complaint with the Office of Special Counsel (OSC) reiterating his concern about a practice of discriminatory hiring at QMHS. IAF, Tab 1 at 12-18. On September 14, 2018, the appellant filed an EEO complaint alleging, among other things, that the agency had discriminated against him when it did not select him for an extra duty assignment with the Math Honor Society, removed his teaching assignments and duties, and subjected him to harassment.[2] IAF, Tab 15 at 148-52.

On or around October 11, 2018, the DoDEA Americas Chief of Staff became aware of multiple complaints of harassment and a hostile work environment made against the appellant and requested that the agency's OIG investigate the allegations. IAF, Tab 14 at 56. OIG conducted an investigation and issued a report concluding that, during the 2017-2018 school year and continuing into the 2018-2019 school year, the appellant had harassed DoDEA employees by creating a hostile work environment with acts of disruptive behavior, to include verbal and email intimidation, in violation of school policy.[3]

---

[2] The record reflects that, in February 2018, the appellant completed a letter of intent form requesting a change of position for the 2018-2019 school year to his first choice of Virtual School Monitor, second choice of Spanish Teacher, or third choice of remaining in his current position as a Math Teacher. IAF, Tab 13 at 47. In June 2018, the agency reassigned the appellant to the position of Virtual School Facilitator for the 2018-2019 school year. IAF, Tab 15 at 262. On November 29, 2018, the agency reassigned the appellant back to his position as a Math Teacher. IAF, Tab 13 at 51.

[3] The investigator interviewed 23 witnesses and found, among several things, that the appellant became disgruntled in 2017 after he was not selected for the Assistant

*Id.* at 56-74. By letter dated December 10, 2019, the QMHS Principal proposed the appellant's 5-day suspension for conduct unbecoming a Federal employee (8 specifications), based on OIG's investigation report. *Id.* at 196-200. On February 21, 2020, the Community Superintendent for Fort Bragg/Cuba sustained the charge and suspension. *Id.* at 182-83.

On January 31, 2019, Math Teacher C.S. complained to the QMHS Principal about an interaction she had with the appellant during a math department meeting the previous day. *Id.* at 258. C.S. alleged that, during a conversation with her and Math Teacher S.S., the appellant stated, among other things, that the QMHS Principal was to blame for the "entire mess" in the math department and alleged that C.S. was unqualified for her job. *Id.* The QMHS Principal investigated the complaint and, on February 6, 2019, issued the appellant a letter of reprimand (LOR) based on charges of (1) making false, malicious, or unfounded statements against other employees, supervisors, other officials or subordinates with the intent to destroy or damage the reputation, authority, or official standing of those concerned; and (2) lack of candor, for stating during his investigatory interview that C.S. interrupted his conversation with S.S. when the evidence indicated she did not. *Id.* at 258-61.

On February 18, 2019, the appellant filed a second complaint with OSC alleging that the LOR was in retaliation for his first OSC complaint, his EEO complaint, and an OIG complaint that he stated he filed against C.S. and the Assistant Principal "for the fabrication of documents to support a selection giving an unfair advantage to [C.S.]." IAF, Tab 1 at 23. By letter dated August 16, 2021, OSC informed the appellant that it had terminated its inquiry into his

_____

Principal position, that he complained about positions being "stolen" from him after he was assigned to the Virtual School Facilitator position and not assigned to teach Spanish, that he used instructional time to gossip and complain about other teachers and QMHS administration, and alleged to students that a specific school employee had engaged in "reverse racism." IAF, Tab 14 at 69-71.

allegations and notified him of his right to seek corrective action from the Board. *Id.* at 6-7. The appellant subsequently filed the instant, timely IRA appeal.

The administrative judge notified the appellant of the applicable jurisdictional burden in IRA appeals and ordered him to file evidence and argument on the same. IAF, Tab 3. After considering the appellant's responses, the administrative judge found that the appellant was raising the following alleged protected disclosures and protected activity: (1) the August 2018 email alleging that the QMHS Principal was engaging in a discriminatory pattern of hiring; (2) the August 2018 OSC complaint; (3) the September 2018 EEO complaint; and (4) the appellant's OIG complaint. IAF, Tab 20 at 5-6. The administrative judge concluded that the Board had jurisdiction over (1) and (2), but the appellant's September 2018 EEO complaint did not constitute protected whistleblowing under 5 U.S.C. § 2302(b)(8) and the appellant failed to exhaust with OSC his claim that the agency retaliated against him for filing an OIG complaint. Thus, the administrative judge concluded that the Board lacked jurisdiction over those claims. *Id.* at 6-9, 13-14. The administrative judge also found that the appellant had raised the following alleged personnel actions: (1) the February 7, 2019 LOR; (2) reassignment into a non-teaching position; and (3) an OIG investigation into allegations he had created a hostile work environment.[4] *Id.* at 10. The administrative judge found that the Board had jurisdiction over the LOR, but that the appellant failed to exhaust with OSC any claim that he was reassigned in retaliation for whistleblowing or that the OIG investigation against him was undertaken in retaliation for protected activity. *Id.* at 10-13.

---

[4] The administrative judge noted that the appellant had referenced a proposed suspension for "Conduct Unbecoming a Federal Employee" in his correspondence to OSC, but concluded that she would not consider the appellant's suspension as an alleged personnel action in this appeal because the appellant did not raise this alleged personnel action in his jurisdictional response and stated in his rebuttal to the agency's jurisdictional response that it is not an action before the Board. IAF, Tab 20 at 10 n.3.

After the appellant withdrew his request for a hearing, the administrative judge issued an initial decision based on the written record denying the appellant's request for corrective action. IAF, Tab 42, Initial Decision (ID) at 1. The administrative judge first discussed and reanalyzed her prior findings as to jurisdiction. ID at 6-11, 15-19. She then found that the appellant failed to prove that he had a reasonable belief that he was making a protected disclosure under 5 U.S.C. § 2302(b)(8) when he alleged that the QMHS Principal was engaging in discriminatory hiring by only hiring Black women. ID at 11-15. However, the administrative judge found that the appellant proved by preponderant evidence that his protected activity—his OSC complaint—was a contributing factor in the issuance of the February 2019 LOR because the QMHS Principal appeared to have had some awareness of the appellant's OSC complaint and issued the LOR only months after the appellant filed his complaint with OSC. ID at 15, 19-20. Nevertheless, the administrative judge concluded that the agency established by clear and convincing evidence that it would have issued the LOR in the absence of the appellant's protected activity. ID at 21-29.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 2. On review, he argues that the administrative judge erred in finding that he failed to exhaust before OSC his allegation of retaliation for filing an OIG complaint, that the agency's OIG investigation into his alleged misconduct is a covered personnel action and the administrative judge erred in finding that he failed to exhaust this personnel action with OSC, that the administrative judge erred in her legal analysis and conclusion that he did not have a reasonable belief that he made a protected disclosure to the Mid-Atlantic District Superintendent, and that the administrative judge erred in her *Carr* factors analysis. *Id.* at 4, 16-25. The agency has filed a response. PFR File, Tab 4. The appellant has filed a reply. PFR File, Tab 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over an IRA appeal based on whistleblower reprisal under the Whistleblower Protection Enhancement Act of 2012 (WPEA) if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations of the following: (1) he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D);[5] and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). Once an appellant establishes jurisdiction over his IRA appeal, he then must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence[6] that he made a protected disclosure or engaged in

---

[5] On review, the appellant does not challenge the administrative judge's analysis or conclusion that the Board does not have jurisdiction over his claim of reprisal for filing an EEO complaint because filing an EEO complaint does not constitute whistleblowing under 5 U.S.C. § 2302(b)(8). ID at 7; IAF, Tab 20 at 8. However, we modify the initial decision to add that the WPEA extended the Board's jurisdiction over IRA appeals to claims of reprisal for filing complaints seeking to remedy whistleblower reprisal under 5 U.S.C. § 2302(b)(8). *See* 5 U.S.C. §§ 1221(a), 2302(b)(9)(A); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013). Here, based on our review of the record, it seems that the appellant's EEO complaint alleges discrimination and reprisal for filing his August 2018 OSC complaint. IAF, Tab 14 at 347, Tab 15 at 149. However, the appellant did not allege that the substance of his EEO complaint concerned remedying a violation of 5 U.S.C. § 2302(b)(8), IAF, Tabs 9, 17, and it does not appear that the agency investigated that claim as part of the appellant's EEO complaint, IAF, Tab 14 at 347-65, or that OSC construed the appellant's EEO complaint as one seeking to remedy whistleblower reprisal, IAF, Tab 1 at 6. As such, we agree with the administrative judge's conclusion that the Board lacks jurisdiction over the appellant's allegations of reprisal for his EEO complaint in the context of this IRA appeal. *See Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1329 (Fed. Cir. 2020) (explaining that the Board lacks jurisdiction in an IRA appeal over claims of reprisal for EEO activity protected under section 2302(b)(9)(A)(ii)).

[6] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

protected activity that was a contributing factor in a personnel action taken against him. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). If the appellant makes out a prima facie case, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure. *Id.* (citing 5 U.S.C. § 1221(e)(1)-(2); *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 12 (2011)).

<u>The administrative judge incorrectly found that the appellant failed to exhaust his claim of retaliation for protected OIG activity.</u>

Under 5 U.S.C. § 1214(a)(3), an employee is required to exhaust his administrative remedies with OSC before seeking corrective action from the Board in an IRA appeal. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011). The Board, in *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11, clarified the substantive requirements of exhaustion. The requirements are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. The Board's jurisdiction is limited to those issues that were previously raised with OSC. However, appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. *Id*. Appellants may demonstrate exhaustion through their initial OSC complaint; evidence that they amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations; and their written responses to OSC referencing the amended allegations. *Id*. Appellants also may establish exhaustion through other sufficiently reliable evidence, such as an affidavit or a declaration attesting that they raised with OSC the substance of the facts in the Board appeal. *Id*. An appellant must prove exhaustion with OSC by preponderant evidence. *Id.*, ¶ 11.

In this case, the appellant submitted a copy of both of his OSC complaints, copies of his correspondence to OSC, and OSC's closeout letter. IAF, Tab 1 at 6-7, 12-30, 63-67. With regard to his OIG activity, the appellant asserted in his second OSC complaint that he had made a disclosure to the agency's OIG regarding "[u]nfair advantage to people of the administrator's own race through the fabrication of documents to try to justify a selection," and he further claimed that "[a]ll of these retaliatory unfounded accusations started after I filed a complaint with [O]IG." *Id.* at 23. The administrative judge concluded that, because the appellant failed to provide any other information to OSC supporting this allegation, and because this "bare and conclusory allegation" would not be sufficient for OSC to pursue an investigation, the appellant failed to establish that he exhausted his claim of retaliation for filing an OIG complaint before OSC. ID at 7-9. The appellant disputes this finding and we agree with the appellant. PFR File, Tab 2 at 16-17. We find these assertions sufficient for exhaustion purposes and note that the appellant also referenced his "IG" complaint numerous other times throughout his second OSC complaint. IAF, Tab 1 at 23. Furthermore, OSC specifically acknowledged the appellant's claim that he had filed an OIG complaint in its communications to the appellant and in its closeout letter. IAF, Tab 1 at 6, 27; *see Sutton v. Department of Justice*, 94 M.S.P.R. 4, ¶ 9 (2003) (considering OSC's termination letters in determining whether the appellant satisfied the exhaustion requirement), *aff'd*, 97 F. App'x 322 (Fed. Cir. 2004). Given all of the above, we modify the initial decision to find that the appellant proved by preponderant evidence that he provided OSC with a sufficient basis to pursue an investigation as to this claim. *See Chambers*, 2022 MSPB 8, ¶¶ 10-11.

Nonetheless, we find that the appellant did not prove by preponderant evidence that he engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C) or (D) with respect to his alleged OIG complaint. Under 5 U.S.C. § 2302(b)(9)(C), any disclosure of information to OIG or OSC is protected regardless of its content as long as such disclosure is made in

accordance with applicable provisions of law. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8. However, here, apart from the appellant's assertions to OSC, there is no preponderant evidence that he actually filed a complaint with the agency's OIG. The appellant did not submit a copy of this alleged OIG complaint, did not state when he supposedly filed this complaint, and did not otherwise explain the nature of this complaint. IAF, Tabs 9, 17; ID at 8 n.4. Under these circumstances, we find that the appellant did not prove by preponderant evidence that he engaged in protected activity with respect to his alleged OIG complaint.[7]

## The administrative judge incorrectly found that the appellant did not exhaust his claim that he was subjected to an agency investigation in retaliation for his protected activity.

On review, the appellant also argues that the administrative judge incorrectly concluded that he failed to exhaust before OSC his claim that the agency's October 2018 OIG investigation was in retaliation for his protected activity, and he further asserts that the agency's investigation is a covered personnel action. PFR File, Tab 2 at 19-20. We agree with him that the administrative judge erred in her exhaustion analysis. In the initial decision, the

---

[7] Even if we were to find that the appellant proved by preponderant evidence that he engaged in protected activity by filing a complaint with the agency's OIG, the appellant failed to prove that such protected activity was a contributing factor in the LOR, which, as discussed further below, is the only personnel action at issue in this appeal. *See* 5 U.S.C. § 1221(e)(1). Not only has the appellant failed to provide any evidence as to when he allegedly filed this OIG complaint, but it appears that the appellant's OIG complaint was directed at Math Teacher C.S. and the Assistant Principal, and there is no evidence that either individual knew of the appellant's alleged complaint, were involved in the decision to issue the LOR, or disclosed information about the appellant's complaint to the QMHS Principal or otherwise influenced his decision in issuing the LOR. ID at 7 & n.3; IAF, Tab 1 at 23; *see Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶¶ 14-15 (2012) (summarizing the various methods by which an appellant can satisfy the contributing factor criterion). Based on this and the strength of the agency's reasons for reprimanding the appellant, which is also discussed further below, we find that the appellant would not have established a prima facie case of whistleblower retaliation based on alleged protected OIG activity. *See Dorney*, 117 M.S.P.R. 480, ¶ 15.

administrative judge found that the appellant alleged in his first OSC complaint that the QMHS Principal asked agency officials to "conduct an investigation" about him and that the investigation was in "reprisal" for his whistleblowing activities. ID at 18; IAF, Tab 1 at 22. She concluded, however, that the appellant failed to exhaust this claim of a retaliatory investigation because he "provided no details to OSC about the alleged investigation and provided no basis for his conclusion that it was in retaliation for protected activity." ID at 18. The administrative judge's conclusion was an overly restrictive reading of the exhaustion standard and ignores other evidence of exhaustion on this issue. *See Chambers*, 2022 MSPB 8, ¶¶ 10-11 (stating that the requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation). In addition to the above, the appellant claimed in one of his written responses to OSC that the QMHS Principal proposed his suspension "based on the investigation performed by HQ" that began after he raised his concern about hiring practices, IAF, Tab 1 at 30, which OSC acknowledged in its closeout letter, *id.* at 6. Further, the appellant's written response also indicates that OSC acknowledged his claim that he was "subjected to a retaliatory investigation" in a December 6, 2019 letter to him. *Id.* at 27. Consequently, we modify the initial decision to find that the appellant proved by preponderant evidence that he provided OSC with information sufficient to pursue an investigation into his allegation of an alleged retaliatory personnel action.

However, we disagree with the appellant that the OIG investigation is a covered personnel action. PFR File, Tab 2 at 19. The Board has held that an investigation into an allegation of misconduct is not a personnel action per se. *Spivey v. Department of Justice*, 2022 MSPB 24, ¶ 10 (citing *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 955 (Fed. Cir. 2020) (concluding that "retaliatory investigations, in and of themselves, do not qualify as personnel actions" under the whistleblower protection statutory scheme)). Instead, such investigations come within the statutory definition of a "personnel action" only if

they result in a significant change in job duties, responsibilities, or working conditions or have effects that otherwise fit within one of the items listed under 5 U.S.C. § 2302(a)(2)(A). *Id.* However, even if the investigation does not constitute a significant change in working conditions or other personnel action enumerated in section 2302(a)(2)(A), the Board will consider evidence of the conduct of an agency investigation when it is so closely related to a personnel action that it could have been pretext for gathering evidence to use to retaliate against an employee for whistleblowing. *Id.* Absent any proposed disciplinary action, the mere threat of disciplinary action can also amount to a personnel action. *Id.*, ¶ 7.

Here, the agency's OIG investigation resulted in the appellant's suspension, which fits within the definition of a "personnel action" under 5 U.S.C. § 2302(a)(2)(A). IAF, Tab 14 at 182-83, 196-200. In her order finding jurisdiction, however, the administrative judge concluded that the appellant's suspension would not be considered as an alleged personnel action in this appeal because the appellant did not raise this alleged personnel action in his jurisdictional response, and because he stated in his rebuttal to the agency's jurisdictional response that it is not an action before the Board. IAF, Tab 17 at 11, Tab 20 at 10 n.3. In her initial decision, the administrative judge noted that the appellant did not file any objection to her order or provide evidence and argument regarding his suspension in his closing evidence or argument. ID at 3 n. 2. On review, the appellant's new counsel notes that the appellant "elected not to pursue this personnel action before the Board" and that the suspension is "not the subject of the current appeal." PFR File, Tab 2 at 14 n.1, 20 n.2. Consequently, because the appellant did not object to the administrative judge's order and his new counsel on review does not appear to dispute or otherwise challenge this finding, we do not consider the suspension as a personnel action in this case. *See* 5 C.F.R. § 1201.115 (stating that "[t]he Board normally will consider only issues raised in a timely filed petition or cross petition for review"). In addition, the appellant did not

provide any evidence or argument establishing that the agency's investigation had any practical or significant effects on the overall nature and quality of his working conditions, duties, or responsibilities. *See Spivey*, 2022 MSPB 24, ¶ 13.

Further, there is no evidence that the agency's OIG investigation was so closely related to the LOR that it could have been pretext for gathering evidence to use to retaliate against the appellant for whistleblowing. To this end, we agree with the administrative judge that the only personnel action at issue in this case is the LOR.[8] ID at 19. However, as the administrative judge discussed during the appeal, the agency's OIG investigator provided a sworn statement maintaining that she only investigated allegations that the appellant had created a racially motivated hostile work environment for multiple teachers and staff members during the 2017-2018 school year and the first two months of the 2018-2019 school year. IAF, Tab 31 at 12-15; *see Russell v. Department of Justice*, 76 M.S.P.R. 317, 324 (1997) (stating that, in considering evidence of pretext, the Board looks at where the investigation had its beginnings). The investigator specifically averred that she did not conduct any interviews or engage in fact-finding regarding the allegations that formed the basis of the LOR, and that she advised the agency that those allegations would need to be investigated and resolved separately. IAF, Tab 31 at 14, Tab 32 at 2.

As a result, we find that the appellant did not establish that the agency's OIG investigation is a covered personnel action or that the investigation was pretext for retaliation and should be considered in conjunction with the LOR.

---

[8] With regard to the last alleged personnel action, as discussed above, the administrative judge found that the appellant failed to exhaust with OSC any claim that he was reassigned *in retaliation for protected activity*. ID at 16-17. We agree with her conclusion.

We modify the initial decision to clarify that, even if the appellant reasonably believed that he had disclosed discriminatory hiring practices, such a disclosure would not fall under the purview of 5 U.S.C. § 2302(b)(8).

On review, the appellant challenges the administrative judge's conclusion that he failed to show that he made a protected disclosure regarding his allegation that the QMHS Principal was engaging in "reverse discrimination" by only hiring Black women. PFR File, Tab 2 at 17-19; IAF, Tab 9 at 13-14. In the initial decision, the administrative judge concluded that the appellant failed to show that he reasonably believed that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) regarding discriminatory hiring practices because the agency submitted evidence showing that there were nine employees appointed to QMHS positions during the timeframe stated by the appellant, including five Black females, three White females, and one White male, and it seemed "unlikely that a disinterested observer, assessing color and gender based on simple observation, could reasonably conclude that, in making hiring decisions, the QMHS Principal violated the law or engaged in abuse of authority by hiring only females of his same race and color." ID at 14-15. We find that the administrative judge erred in her analysis here. Even if the appellant had a reasonable belief such a violation occurred, the Board recently reaffirmed that disclosures about discrimination based on Title VII-protected grounds, such as race, color, and sex, are excluded from coverage under 5 U.S.C. § 2302(b)(8) because they are covered by 5 U.S.C. § 2302(b)(1)(A), and therefore not within the purview of the Board's IRA jurisdiction. *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 10-17, 22-23 *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023); *see Von Kelsch v. Department of Labor*, 59 M.S.P.R. 503, 509 (1993) (reasoning that Congress did not intend to extend protection to appellants who allege that their agencies retaliated against them after they challenged practices made unlawful by Title VII), *overruled on other grounds by Thomas v. Department of the Treasury*, 77 M.S.P.R. 224, 236 n.9 (1998), *overruled by Ganski v. Department of the*

*Interior*, 86 M.S.P.R. 32 (2000). Therefore, although we agree with the administrative judge's conclusion that the appellant's disclosure did not constitute a protected disclosure under 5 U.S.C. § 2302(b)(8),[9] we modify the basis for her finding.

<u>We agree with the administrative judge that the agency established by clear and convincing evidence that it would have issued the LOR absent the appellant's protected activity, but we modify and clarify her analysis.</u>

Because the appellant made a prima facie case of whistleblower reprisal, the burden shifts to the agency to show by clear and convincing evidence that it would have issued the LOR absent the protected OSC activity. Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e). In determining whether an agency has shown by clear and convincing evidence that it would have taken the personnel action in the absence of the whistleblowing, the Board generally will consider the following factors ("*Carr* factors"): (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *See Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Lu*, 122 M.S.P.R. 335, ¶ 7. A proper analysis of the clear and convincing evidence issue requires that all of the evidence be weighed together—both the evidence that supports the agency's case and the evidence that detracts from it. *Shibuya v. Department of Agriculture*,

---

[9] Further, because this disclosure concerned a violation of Title VII, it does not fall under the purview of 5 U.S.C. § 2302(b)(9)(A)(i). *See Edwards*, 2022 MSPB 9, ¶¶ 24-25.

119 M.S.P.R. 537, ¶ 37 (2013) (citing *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012)).

Regarding *Carr* factor one, we find that the agency had strong evidence in support of its personnel action. As noted above, the LOR charged the appellant with (1) making false, malicious, or unfounded statements against other employees, supervisors, other officials or subordinates with the intent to destroy or damage the reputation, authority, or official standing of those concerned; and (2) lack of candor, following an investigation of an interaction that the appellant had with the math teachers during a department meeting on January 31, 2019. IAF, Tab 14 at 258-61. In considering the first *Carr* factor, the administrative judge incorrectly discussed whether the appellant engaged in the charged conduct instead of analyzing the strength of the agency's evidence in support of the LOR. ID at 23-28; *see Yunus v. Department of Veterans Affairs*, 84 M.S.P.R. 78, ¶ 12 (1999) (holding that, in an IRA appeal, the relevant inquiry is not whether the appellant committed any actual misconduct, but whether the agency had strong evidence to support its personnel action). However, her analysis still appropriately found that the math teachers' statements established that the appellant made several inappropriate comments that were offensive, demeaning, and unprofessional. ID at 23-27.

On review, the appellant argues that the administrative judge erroneously disregarded his rebuttal of the statements made against him, including that he provided evidence of several disparities between the statements. PFR File, Tab 2 at 21-22. We disagree. Below, the appellant argued that S.S.'s statement was not credible because the QMHS Principal stated in the LOR that he asked S.S. to write a statement after he received C.S.'s complaint, yet S.S. stated in an April 2022 sworn statement submitted on appeal that she "was not prompted by anyone to write a statement" and did so on her "own initiative." IAF, Tab 39 at 19, Tab 40 at 7-8; ID at 23 n.18. However, the administrative judge addressed this in the initial decision and reasonably found that, because the incident at issue

occurred many years ago, there may be little recollection about a minor detail like how the statements were initiated. ID at 23 n.18.

We note that the administrative judge found "limited evidence" regarding the lack of candor charge. ID at 27. We agree with the administrative judge that there is not strong evidence in support of this specific charge. However, on the whole, we find that C.S. and S.S.'s statements constitute strong evidence in support of the agency's issuance of a LOR. C.S. and S.S.'s statements reflect that the appellant made malicious or unfounded statements against them and the QMHS Principal. The agency's decision to issue a reprimand in response to these types of inappropriate comments was a reasonable response, especially given that a letter of reprimand appears to be the minimum disciplinary action for such an offense and only remained in the appellant's official personnel folder for 2 years. *Id.* at 260. We thus find that *Carr* factor one weighs in the agency's favor.

Regarding *Carr* factor two, the administrative judge found that the QMHS Principal had "no demonstrated motive" to retaliate against the appellant. ID at 28. She reasoned that the agency investigated the allegations that the QMHS Principal had engaged in discriminatory hiring practices and found them "unwarranted," and found that the QMHS Principal was not subjected to any personnel action or other consequence as a result of the appellant's allegations. *Id*. The appellant disputes this finding on review, and we agree with him that the administrative judge erred in her conclusion here. PFR File, Tab 2 at 22-23. The appellant's OSC complaint directly implicated the QMHS Principal and contained serious derogatory and potentially damaging allegations against him in his capacity as a manager. IAF, Tab 1 at 15-16; *see Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 33 (2013) (finding that criticisms that reflect on individuals in their capacities as managers and employees are sufficient to establish substantial retaliatory motive); *see also Russell*, 76 M.S.P.R. at 326 (considering the fact that the agency officials were the subjects of the appellant's protected disclosures in determining that they had a retaliatory motive). In

addition, as the administrative judge found, the QMHS Principal appeared to have had some awareness of the appellant's OSC complaint as of August 2018, months before he issued the appellant the LOR. ID at 20; IAF, Tab 15 at 65. Furthermore, the QMHS Principal was the subject of several of the appellant's disparaging remarks during the January 2019 meeting that were made in front of staff, and which echoed the allegations that the appellant made in his complaint to OSC. The record reflects that the QMHS Principal had at least some professional motive to retaliate against the appellant. We therefore modify the administrative judge's finding regarding *Carr* factor two to find the existence of a modest retaliatory motive.

Finally, the appellant argues that the administrative judge erred in her analysis of the third *Carr* factor. PFR File, Tab 2 at 24-25. In the initial decision, the administrative judge concluded that "there is undisputed evidence that the agency takes similar actions against other employees regardless of their whistleblower status." ID at 28. The administrative judge based this finding on an agency administrator's sworn statement that she has only experienced one other DoDEA employee "who made offensive and/or derogatory comments to and about other employees and staff members that was similar" to the appellant's misconduct and that she issued that employee an LOR. *Id.*; IAF, Tab 39 at 29. We agree with the appellant that the administrative judge erred in her analysis here. As noted above, the third *Carr* factor looks at whether the agency presented any evidence as to whether the agency has taken similar actions against similarly situated employees *who were not whistleblowers*. *See Carr*, 185 F.3d at 1323. Thus, the administrative judge erred in disregarding whether this other employee was a whistleblower. Furthermore, the administrative judge erred in finding that this factor weighed in favor of the agency when the agency did not provide any specific information regarding this other employee, including whether the employee had engaged in protected whistleblowing activity or was otherwise similarly situated to the appellant. The U.S. Court of Appeals for the Federal

Circuit has found that the third *Carr* factor cannot favor the Government when the Board finds an absence of relevant comparator evidence. *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). Because we find that the agency administrator's sworn statement alone is insufficient to show that this other employee is in fact an appropriate comparator, we modify the initial decision to find that *Carr* factor 3 does not weigh in the agency's favor. *See id.*; *see also Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 18.

Nevertheless, despite the administrative judge's inaccurate analysis of the *Carr* factors, we agree with her ultimate conclusion and conclude that the QMHS Principal would have issued a reprimand absent the appellant's protected activity and regardless of any motive to retaliate.

Accordingly, we deny the appellant's petition for review. The initial decision is affirmed as modified herein.

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative receives this decision</u>. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.